The Chicago, Burlington and Quincy Railroad Co.

*v.*

William Pollock.

*Opinion filed February 21, 1902.*

1. Evidence—*when objections are properly sustained to questions on direct examination.* In an action against a railroad company for personal injuries, where defendant's witness has stated that she heard the whistle and went to her door and saw the train moving and the plaintiff lying beside the track, it is proper to sustain the plaintiff's objections to the defendant's questions whether it was an usual or unusual thing for a train to pass along the track, and whether she had seen an engine pass there before.

2. Appeals and errors—*when Supreme Court cannot consider the evidence.* The Supreme Court cannot enter into a consideration of the evidence to determine what it proves or tends to prove, where the Appellate Court has affirmed the judgment in favor of the plaintiff, and where no instruction to find for the defendant was asked at the close of the plaintiff's evidence or of all the evidence.

3. Instruction—*when an instruction as to ringing bell or sounding whistle is not misleading.* An instruction requiring those in charge

of an engine, on approaching a public crossing, "either to ring a bell or sound a whistle, sounding until said crossing was reached," is not calculated to mislead the jury into believing that defendant's duty would not be performed by ringing the bell continuously until the crossing was reached.

4. RAILROADS—*effect where a train is started upon private property.* The fact that a train is started upon private property does not relieve those in charge from complying with the law and ordinances regulating the movement of trains within city limits as soon as the train passes beyond the limits of such private property.

5. SAME—*what is required of one approaching a railroad track depends upon the circumstances of each case.* Courts are not at liberty to say, in their instructions, that one approaching a railroad track must, as a matter of law, conduct himself in a particular manner and observe a certain line of conduct in order to avoid the imputation of contributory negligence.

6. EVIDENCE—*preponderance does not mean both more and better evidence.* The plaintiff is required to make his case by a preponderance of the evidence, and this preponderance may arise from his having more or better evidence than the defendant, but he is not required to have both more and better evidence.

7. LAW AND FACT—*what is reasonable care is a question of fact.* It is for the jury to determine, as a question of fact, what the plaintiff was required to do, under the circumstances, in order to sustain the averment of his declaration that he was exercising due care, and what omissions, if any, constituted failure to use such care.

*C., B. & Q. R. R. Co.* v. *Pollock,* 93 Ill. App. 483, affirmed.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Henry county; the Hon. W. H. GEST, Judge, presiding.

CHARLES K. LADD, for appellant.

ALEXANDER McLEAN, and N. F. ANDERSON, for appellee.

Mr. JUSTICE RICKS delivered the opinion of the court:

This case comes by appeal from the Appellate Court for the Second District from an affirmance of a judgment of the circuit court of Henry county for $5000, in favor of appellee. Appellant, by its servants, was running a

train, consisting of a switch engine and two cars, in the corporate limits of Kewanee. The engine was running backwards and pulling the cars, and came from the Western Tube Company's grounds, into which the switch tracks ran, on to Walnut street, in the city, and there struck appellee and broke his leg.

The declaration contained three counts, the first being a general charge of negligence in the operation and running of the train, the second a failure to give the statutory signals, and the third charged the running of the train at a rate of speed prohibited by the ordinances of that city. The plea was, "Not guilty."

The errors assigned upon the record are the exclusion and admission of evidence; in giving instructions in favor of appellee and refusing instructions for appellant; in not instructing the jury to find a verdict for the defendant; in overruling motion for a new trial; that the verdict was contrary to the law and the evidence, and the result of passion; that no liability was established and that the Appellate Court erred in affirming the judgment.

The only question raised as to admission or exclusion of evidence relates to the testimony of Mrs. Johnberg, a witness testifying in behalf of appellant. After stating that she heard the whistle and was attracted by it, and went to her door and saw the train moving and saw appellee lying by the track, she was asked by counsel for appellant this question: "Is it an usual or unusual thing for a switch engine to pass along that track?" Appellee objected, and the objection was sustained and an exception taken. Witness was further asked: "You may state if you had seen an engine pass there before." An objection was interposed to that question, when the court inquired, "What is the purpose of it?" Counsel for appellant replied: "The purpose is, that if it was anything unusual for an engine to be going along or if there was something unusual about this engine that attracted her attention." The court sustained the objection and the appellant ex-

cepted. The appellant now insists that the exclusion of the evidence was prejudicial to it, and it was entitled to show to the jury the knowledge of the witness of other trains there, as it tended to show whether this train was handled differently from others, and also as it tended to show that the place was dangerous, and what caused the danger that appellee claimed he knew was there. There is no claim that any other engine or train did the damage complained of, nor is it contended that at the time of this injury any other switch engine or switch train was in the vicinity of the injury, and we are unable to see upon what theory appellant was entitled to have the general subject of other trains passing over that track at other times inquired into. Nor do we see that it could have been any defense for appellant to have shown that other trains were run in the same manner that this one was. The witness testified that she was attracted by the danger signal; that her husband was employed in the tube company's plant, and, hearing the signal, hastened to the door. She was appellant's witness, and it cannot be claimed that this was a matter for cross-examination, and we can see no reason why the court should have admitted it.

No instruction was asked by appellant at the close of the plaintiff's (appellee's) evidence or at the close of all the evidence for the direction of a verdict, and as the verdict in favor of appellee was affirmed by the Appellate Court we are not permitted to go into a consideration of the evidence and determine what it proves or what it tends to prove. *Louisville, New Albany and Chicago Railway Co.* v. *Red,* 154 Ill. 95; *Illinois Central Railroad Co.* v. *Davenport,* 177 id. 110; *Humiston, Keeling & Co.* v. *Wheeler,* 175 id. 514.

The instructions complained of are the second and third given in behalf of appellee. Appellee's second instruction told the jury that "it was the duty of the defendant, in approaching the North Walnut street crossing, either to ring a bell or sound a whistle, sounding

until the said crossing was reached; and if you find, from the evidence, that the plaintiff was injured as charged in the declaration, that the defendant failed in the duty so to ring or whistle as heretofore stated, and that in failing to perform its duty in that regard the defendant was negligent, and that such negligence was the cause of the injury to the plaintiff, then you will find the issues for the plaintiff, provided you also believe, from the evidence, that the plaintiff, at the time of the injury, was in the exercise of ordinary care for his own safety." The criticism of the second instruction made by appellant is, that it required appellant to sound the whistle "until the crossing was reached," and the insistence is that it was sufficient if either the bell was rung or the whistle sounded. We do not think the instruction subject to this criticism. The requirement was that of either ringing a bell or sounding a whistle, sounding until the said crossing was reached, and we think the expression there was, and would properly be understood by the jury to mean, that if either the bell was rung or the whistle sounded until the crossing was reached it would be a compliance with the law in that regard.

Appellee's third instruction told the jury that it was unlawful to run freight trains at a higher rate of speed than six miles an hour within the corporate limits of the city of Kewanee, and if the jury believed, from the evidence, that the plaintiff was injured as charged in the declaration, and that the defendant was running its train at a higher speed than six miles an hour within such corporate limits, and that said train caused the injury to the plaintiff, then the injury to the plaintiff was presumed by law to have been done through the negligence of the defendant, unless the contrary appeared from the evidence, if the jury further found that the plaintiff was in the exercise of ordinary care at the time of the accident. As to this instruction appellant complains that "it tells the jury that they are not to determine from the

evidence, and excludes facts and circumstances in evidence, hence tended to mislead them if otherwise right."
Appellant further insists that, this train having started on the premises of the tube company, which it insists were private premises, there was no authority in law for regulating its speed. The construction placed upon this instruction is not warranted by its language. It has always been sufficient to say in an instruction, as is said in this one two or three times, that the jury shall believe from the evidence. This does not preclude them from believing from the facts and circumstances in evidence, as they are a part of the evidence. The fact that this train started on private premises cannot relieve the appellant from the duty which it owes to the public, when approaching public highways within the city limits, to comply with the law. It may be that if it were clearly established that the premises were private in the sense contended for here, and the train was running wholly and only within the exclusively private premises, the public would not have such interest, as laws or ordinances regulating its speed would necessarily apply to it. However, we do not so hold. But whatever its rights may be when upon private premises, those rights cease the moment public streets are entered upon, and it would be a very strained construction of the law to hold that because the train was running at such speed on private premises it could not be brought within the limit fixed by the ordinance and stopped in time to save a life or avoid injuring a person on the public street,—that it was relieved from its duties under the law. No case has been cited wherein it has been held that a railroad company may violate the ordinances in regard to speed on private premises any more than upon its own right of way anywhere within the corporate limits.

Appellant offered the following instruction:

"In determining the weight to be given to the testimony of a witness you will take into consideration the

intelligence of the witness, the circumstances surrounding the witness at the time concerning which he testifies, and whether he had more or less opportunity to observe than another witness who may not have seen or heard what such witness says he saw or heard, and also whether the positive affirmative statement of a witness is of more or less weight than the negative statement of a witness."

This instruction the court modified and gave as follows: "In determining the weight to be given the testimony of a witness you will take into consideration the intelligence of the witness; the circumstances surrounding the witness at the time concerning which he testifies; his interest, if any, in the event of the suit; his bias or prejudice, if any; his manner on the witness stand; his apparent fairness or want of fairness; the reasonableness of his testimony; his means of observation and knowledge; the character of his testimony—whether negative or affirmative—of any fact, and all matters and facts and circumstances shown on the trial bearing upon the question of the weight to be given to his testimony, and give each witness' testimony such weight as to you it may seem fairly entitled to." There was no error in the modification of the instruction, in that the instruction given covered all that was asked before the modification.

Appellant's seventh refused instruction told the jury that it was the duty of appellee to look for the train before he got near enough to the track to be hurt, and that if he did not so look, but walked on to the track after he could have seen the train coming toward him, and was, by reason of not looking, injured, they should find for the defendant. Appellant's ninth refused instruction told the jury that if they believed the plaintiff could have seen the approaching train when within six feet of the track, by looking in the direction from which the train was coming, and did not do so but walked on to the track and was thereby injured, their verdict should be for the defendant. Appellant's tenth refused instruction told the

jury that it "was the duty of every person, when going upon or crossing a railroad, to look in each direction to see if cars were approaching, and a failure to do so amounts to a want of ordinary care."

The last three instructions were all attempted invasions of the duties and rights of the jury. What is required of one approaching a railroad track depends upon the circumstances of each case. Courts are not at liberty to say, as a matter of law, that one must conduct himself in a particular manner and observe a certain line of conduct in each case and under all conditions. Negligence does not become a question of law, alone, unless the acts constituting it are of such a character that all reasonable men would concur in pronouncing them so. Human conduct must be judged by human standards. It may appear to us, on first view, that a man placed in a perilous condition should do a certain thing, and yet, when we have heard all the facts and circumstances, we may well reach the conclusion that in doing the entirely opposite thing he was exercising the highest care of which the circumstances would admit. Whatever may have been the rule in this State in former years, this question is no longer an open one, and these refused instructions, and those of their class, are now disapproved by this court. *Chicago and Northwestern Railway Co.* v. *Hansen,* 166 Ill. 623; *Chicago and Alton Railroad Co.* v. *Pearson,* 184 id. 386; *Pennsylvania Co.* v. *Frana,* 112 id. 398.

Appellant's eighth refused instruction required the plaintiff to "prove, by *more* and *better* evidence than the defendant, that he was, when injured, doing all that a reasonably cautious man would be, under the circumstances, to protect himself from injury." This instruction requires more than the law requires. The plaintiff is required to make his case by a preponderance of the evidence. That preponderance may arise from the plaintiff having either more evidence or better evidence, but he is not required to have both more and better. An

equal number of witnesses may testify on each side to the same question, and the jury may regard the evidence of the witnesses for the plaintiff better than that of the witnesses for the defendant, and thereby hold that the plaintiff has made the preponderance.

Appellant's eleventh refused instruction was to the effect that if the plaintiff was familiar with the place where he was hurt and knew that a switch·engine was liable to pass where he was at almost any time, and that plaintiff's duties did not require him to be at the place where injured at the time when injured, then the plaintiff was required to exercise a higher degree of care than he would have been required to exercise if he had been a stranger and not acquainted with the situation. This instruction was properly refused. Appellee was bound to use reasonable care for his own safety. What is reasonable care depends upon the facts and circumstances, of which the jury are to be the judges. It was the duty of the jury to determine what acts appellee was required to do, under the circumstances, in order to sustain the averment in his declaration that he was in the exercise of due care, and what omissions, if any, constituted a want of the exercise of that sort of care. Circumstances may arise when due care may require a very high degree of care, when, on the other hand, a very slight amount of care may, under the circumstances, be all that was due.

With the question of the amount of damages this court is not concerned. What amount of damages appellee was entitled to recover was a question of fact to be determined primarily by the jury, and when affirmed by the Appellate Court was conclusive upon this court.

Finding no errors the judgment of the Appellate Court is affirmed.                    *Judgment affirmed.*