464 P.2d 585

**W. P. HARLIN CONSTRUCTION COMPANY, Plaintiff and Respondent,**

v.

**The CONTINENTAL BANK AND TRUST COMPANY, Zions First National Bank, Stanley Title Company, and George Stanley, Defendants and Appellants.**

**No. 11504.**

Supreme Court of Utah.

Jan. 22, 1970.

review by Supreme Court with insufficient record.

E. J. Skeen, Salt Lake City, for Stanley
Title Co.

**424**

John R. Ayre, Kent S. Lewis, and Albert J. Colton, of Fabian & Clendenin, Salt Lake City, for Continental Bank and Trust Co.

Glen C. Hanni, Salt Lake City, for respondent.

CROCKETT, Chief Justice.

Plaintiff Harlin Construction Company obtained judgment against Continental Bank and Trust Company to recover $9,200 which that Bank improperly charged to plaintiff's account on a check bearing an unauthorized signature; and also against Stanley Title Company and George Stanley for the amount of the same check because of breach of an escrow agreement in paying over the proceeds of the same check to discharge a debt for which plaintiff was not responsible. The trial was to the court, which also made findings and rendered judgment on a cross complaint in favor of Continental Bank against Stanley Title and George Stanley. The respective defendants appeal.

■ It seems advisable in this case to again point out that upon appellate review, we do not survey the facts as an appellant desires to see them, nor even as he thinks the trial court should have seen them. But we are obliged to assume that the trial court believed those aspects of the evidence, and drew such reasonable inferences as could fairly be drawn therefrom in the light favorable to the sustaining of his findings and judgment.[1]

In the Fall of 1964, the W. P. Harlin Construction Co. (Harlin) commenced negotiations with doctors Noble, Ungricht and Simpson, and their corporation, Holladay Building Corporation for the construction on a Medical Center at 2210 East 4800 South in Holladay, Utah. It was to be erected according to plans prepared by architect John Sugden, who had been retained by the doctors. Pursuant to the negotiations, a written contract was entered into on March 31, 1965 containing inter alia these provisions: Harlin as a general contractor would construct the building for a maximum $340,700 plus a fixed fee of $20,000, the latter evident by a promissory note signed by the doctors. For any saving in cost below the stated maximum Harlin was to receive 25% and the doctors 75%. Harlin was required to furnish a performance bond and a bond guaranteeing payment for labor and material. But in regard to the architect's fee, which as will be seen below is important in this case, there was no express provision. However, there was a letter sent by Harlin dated February 1, 1965, and thus two months prior to the date of the contract, in which Harlin specifically denied responsibility for such architect's fee.

1. See Culley v. Culley, 17 Utah 2d 62, 404 P.2d 657.

The land for the project had been purchased by the doctors, giving Zions First National Bank and Trust Company a first mortgage thereon. In order to finance the construction of the building, Kassler and Company, a Colorado corporation with a Utah subsidiary, assisted in arranging a construction loan of $375,000. These construction funds were to be transmitted by the actual lender, Investor's Diversified Services, Inc., to the Stanley Title Company which was to act as escrow agent to disburse the money at stated stages of completion of the construction. Stanley Title Company also acted as agent for the Title Insurance Company, of Minnesota, which wrote a title policy insuring the Investor's Diversified Services, Inc., a first mortgage lien on the property for their construction loan.

As it developed the construction loan was not sufficient to pay the total costs incident to construction, which included $23,000 to Kassler and Company for arranging the loan. According to the terms of an escrow agreement drafted by Mr. George Stanley, Kassler Company was to receive its $23,000 finder's fee; $50,000 was to be advanced to Zions First National on condition that it subordinate its first mortgage to the construction loan from Investor's Diversified Services, Inc.; $290,700 to Harlin Construction Co.; $10,000 to the architect Sugden; and $2,000 for certain other miscellaneous costs.

Construction went forward and the contractor Harlin proceeded to draw funds until there remained $75,000 with the escrow, Stanley Title. As against this Zions First National asserted its claim for its $50,000, plus the $23,000 finder's fee for which it had made an advance to and received an assignment from Kassler and Company. Stanley Title refused to disburse these funds to Zions until a lien claim of a supplier, Mine and Smelter Supply, in the sum of $9,200 was paid off. When Harlin Construction was advised of this by Zions Bank, Mr. Harlin was out of town. Harry O. Plath, Vice President, whose signature was not authorized to sign checks, wrote a check for $9,200, drawn on the Continental Bank and payable to Stanley Title Company. He delivered that check to Zions Bank with two copies of a letter stating that it should not be presented for payment until Mr. Harlin returned. On one copy of the letter was a penciled statement by Plath that the check should not be cashed because his name was not authorized to draw it. However, Zions Bank delivered the check to Stanley Title, along with the copy of the letter without the penciled statement, and Stanley Title disbursed the $73,000 to Zions Bank.

The position of Continental Bank is that even though the signature of Harry O. Plath was not authorized to draw checks on Harlin's account, there nevertheless are bases upon which it was justified in

charging this check against that account. It argues that because of Harlin's delay in notifying it of the improper signature on the check that he is precluded from recovery under Sec. 70A–4–406 U.C.A.1953:

(1) When a bank sends to its customer a statement of account accompanied by items paid in good faith in support of the debit entries * * * the customer *must exercise reasonable* care and promptness to examine the statement and items to discover his unauthorized signature * * and must *notify the bank* promptly after discovery thereof.

(2) If the bank establishes that the customer failed with respect to an item to comply with the duties imposed on the customer by subsection (1) the customer is precluded from asserting against the bank.

* * * * * *

(b) an unauthorized signature or alteration by the same wrongdoer on *any other* item paid in good faith by the bank after the first item and statement was available to the customer for a reasonable period not exceeding fourteen calendar days and before the bank receives notification from the customer of any such unauthorized signature or alteration.

In order to come under the protection of the statute just quoted, the Bank did show that it had previously paid a check for $50 signed by Mr. Plath and about which the plaintiff Harlin had made no objection. However, it is necessary to take into account that the next succeeding part of that statute is subsection (3) which provides:

(3) The preclusion under subsection (2) *does not apply if the customer establishes lack of ordinary care on the part of the bank* in paying the item(s).

It will thus be noted that the fundamental question in this case is whether "the customer [plaintiff] established lack of ordinary care on the part of the bank," which question we will again advert to below.

The defendant Continental also places reliance on the provision of Sec. 70A–4–404 U.C.A.1953 which states:

"A bank is under no obligation to a customer having a checking account to pay a check, other than a certified check, which is presented more than six months after its date, but it may charge its customer's account for payment made thereafter in good faith."

The plainly stated purpose of that statute is to provide an overall limitation after which, in commercial parlance, the check is regarded as "stale", and need not be paid.[2] But it does not "authorize" payment of a check up to six months of age, nor does it otherwise affect the duty of the

---

2. Section 70A–4–404, U.C.A.1953 referred to above is Sec. 4–404 of Uniform Commercial Code, and see comment thereto.

Bank to exercise ordinary and reasonable care in paying checks presented to it.

■ Where a depositor has placed money in a checking account to be disbursed on his order the bank requires that he fill out a card bearing the authorized signature, or signatures, upon which checks will be paid; and the only protection the depositor has is his reliance on the universally accepted practice and the rule of law based thereon that the drawee is obliged to know the signature of its depositor and to pay out his money only on his order and when the signature is authorized and genuine.[3]

■ Under the evidence in this case we see nothing unreasonable in the position taken by the trial court that the defendant Continental Bank did not discharge its duty to the plaintiff as a depositor as expressed in its finding that, "at the time Continental paid the check it knew that the check did not bear authorized signatures, and knew that it bore an old date, and knew or should have known that the same was being paid without authority from the plaintiff." This is particularly true when it is realized that the improper payment of this five month old check for the comparatively large sum of $9,200 could have been avoided by simply making a phone call. Similarly for the reasons just discussed we see no merit in the contention of the defendant Bank that because the check was left with Stanley and the Bank was not notified for several months Harlin should be deemed to have ratified the unauthorized signature.[4] This argument ignores these propositions: that ratification requires that there be shown an intention either expressed or implied on the part of the principal to ratify,[5] and that the trial court refused to find in accordance with the Bank's contention on that issue.

■ From what has been said above it should be plainly apparent that the rule of deference to the findings and judgment of the trial court is also controlling on the issues relating to the appeal of the defendants George Stanley and Stanley Title Company. The check in question which had been delivered for the purpose of paying the claim of the Mine and Smelter Supply Company was wrongfully converted by Stanley in applying it to pay the claim of the architect Sugden, a different claim than that for which it had been delivered to Stanley, of which fact Stanley was aware. And this incidentally had the effect of protecting the title insurance company for which Stanley was agent.

3. See Movie Films, Inc. v. First Security Bank of Utah, N.A., 22 Utah 2d 1, 447 P.2d 38 (1968); and for a good exposition of the applicable law see First National Bank of McAlester v. Mann, 410 P.2d 74 (Okl.).

4. See Restatement of Agency 2d § 94.

5. Jones v. Mutual Creamery Co., 81 Utah 223, 17 P.2d 256, 85 A.L.R. 908 (1932).

The findings and judgment of the trial court in favor of plaintiff Harlin Construction Company against Continental Bank and against George Stanley and Stanley Title Company are sustained; and the same order is made as to the findings and judgment in favor of Continental Bank on its cross-complaint against George Stanley and Stanley Title Company.

Affirmed. Costs to plaintiff (respondent).

CALLISTER, TUCKETT, HENRIOD and ELLETT, JJ., concur.