**EXCHANGE BANK & TRUST COMPANY,**
Appellant,

v.

**KIDWELL CONSTRUCTION COM-
PANY, Inc., Appellee.**

No. 507.

Court of Civil Appeals of Texas,
Tyler.

Jan. 21, 1971.

Rehearing Denied Feb. 25, 1971.

Akin, Vial, Hamilton, Koch & Tubb, James A. Knox, Charles J. McGuire, Dallas, for appellant.

Rain, Harrell, Emery, Young & Doke, Stan McMurry, Dallas, for appellee.

MOORE, Justice.

Plaintiff Kidwell Construction Co., Inc., (hereinafter referred to as "Kidwell"), sued Exchange Bank & Trust Co., (hereinafter referred to as "the bank"), and Virginia Beavers Denman to recover funds deposited with the bank and paid out upon forged checks, alleged to have been forged by Virginia Beavers. Denman, the corporate secretary of Kidwell.

The bank specially pleaded that the failure on the part of Kidwell to have other employees examine the cancelled checks and monthly bank statements containing the forged checks constituted negligence on the part of Kidwell directly contributing and proximately causing the loss; that as a result of such negligence, the alleged forger was able to carry on her unauthorized act for a period of time exceeding three years, from November 10, 1964 through December 14, 1967, and that by reason of Kidwell's negligence, it should be held to have been estopped from seeking a recovery. The bank also specially pleaded as a special defense Sec. 4.406 of the Uniform Commercial Code, V.A. T.S., providing that the customer is precluded from recovering upon a forgery where the bank supplies the customer with a statement accompanied with the items paid and the customer fails to use reasonable care in discovering the forger or reporting same to the bank within 14 days.

After a trial before the court, sitting without a jury, the trial court entered judgment awarding Kidwell a joint and several judgment against both the bank and Mrs. Denman for $25,725.88 and also awarded Kidwell an additional judgment against Virginia Beavers Denman and husband for $26,652.84. From this judgment, only the bank has appealed, seeking a review only of that portion of the judgment affecting it.

The facts are basically without dispute. Appellee, Kidwell Construction Co., Inc., was a depositor with appellant, Exchange Bank & Trust Co., and maintained a rather large deposit at all times material hereto. Graber Kidwell, President of Kidwell Construction, was authorized to draw checks upon the account in question. Virginia Beavers Denman had been employed by Kidwell for many years as a bookkeeper and was ultimately made corporate secretary for Kidwell Construction. Between November 10, 1964 and December 14, 1967, Mrs. Denman forged Graber Kidwell's signature upon 65 checks made payable to her totaling the sum of $63,038.55. The record shows that she forged several checks each and every month except for the month of October, 1966. Before the case was brought to trial, Kidwell was able to obtain partial restitution from Mrs. Denman and her husband so that at the time of trial

Kidwell sought to recover only the unreimbursed portion of its loss which amounted to $52,378.72. Kidwell, recognizing the provisions of Article 342–711, Vernon's Ann.Civ.St., and also Sec. 4.406(d) of the Uniform Commercial Code, supra, providing for an absolute bar of all forged checks paid by the bank prior to one year from the date of the time the depositor discovered the forgeries and reported the same to the bank, admitted that the bank's maximum liability consisted of only the forgeries occurring within one year prior to Kidwell's notice to the bank of the forgeries which amount to $25,725.88, which explains the reason why the trial court entered judgment against the bank only for such amount.

The trial court filed extensive findings of fact and conclusions of law. In substance the trial court found that although the bank mailed Kidwell statements of its account each month accompanied by the items paid, Kidwell was not guilty of negligence nor did Kidwell fail to exercise reasonable care and promptness in examining the statement and discovering the unauthorized signature. The trial court further found that by the exercise of proper care and skill the bank could have detected the forgeries prior to charging the same against Kidwell's account and that the bank was negligent in failing to detect the forgery which was a proximate cause of the loss.

The bank has brought forward nine points of error. In substance, the bank contends that the trial court erred in rendering judgment for the depositor Kidwell because it says the evidence shows as a matter of law that Kidwell was negligent in failing to detect the forgeries, and that the evidence likewise shows as a matter of law that there was no negligence or lack of good faith on the part of the bank in paying the forged checks. In the alternative, the bank asserts that the judgment in favor of the depositor is not supported by the evidence and is against the overwhelming weight and preponderance of the evidence. The principal contention of

the bank is that Kidwell should not be permitted to recover because of its negligence which consisted, as claimed by the bank, of employment of an unfaithful agent. Thus the bank says Kidwell failed to exercise reasonable care in discovering and reporting promptly the forgeries claimed after the checks had been returned. Because of such negligence, it is claimed, Kidwell should be estopped from asserting liability against the bank.

Some of the checks involved in this litigation were drawn and cashed prior to July 1, 1966, when the Uniform Commercial Code became effective in this State. However, in view of the fact that Kidwell does not seek to recover upon any of the checks uttered prior to the effective date of the Uniform Commercial Code, but seeks recovery only upon the checks uttered within the one year period prior to notifying the bank in December, 1967, all of the checks involved in this litigation would be controlled by the provisions of the Uniform Commercial Code. Jackson v. First National Bank of Memphis, Inc., 55 Tenn. App. 545, 403 S.W.2d 109. The provisions of these uniform laws applicable to the transaction here involved are as follows:

Sec. 3.406, V.A.T.S.

"Any person who by his negligence substantially contributes to a material alteration of the instrument or to the making of an unauthorized signature is precluded from asserting the alteration or lack of authority against a holder in due course or against a drawee or other payor who pays the instrument in good faith and in accordance with the reasonable commercial standards of the drawee's or payor's business. (59th Legis., Ch. 721, Sec. 3–406.). Acts 1967, 60th Leg., vol. 2, p. 2343, ch. 785, sec. 1."

Sec. 4.406, V.A.T.S.

"(a) When a bank sends to its customer a statement of account accompanied by items paid in good faith in support of the debit entries or holds the statement and items pursuant to a re-

quest or instructions of its customer or otherwise in a reasonable manner makes the statement and items available to the customer, the customer must exercise reasonable care and promptness to examine the statement and items to discover his unauthorized signature or any alteration on an item and must notify the bank promptly after discovery thereof.

"(b) If the bank establishes that the customer failed with respect to an item to comply with the duties imposed on the customer by Subsection (a) the customer is precluded from asserting against the bank

"(1) his unauthorized signature or any alteration on the item if the bank also establishes that it suffered a loss by reason of such failure; and

"(2) an unauthorized signature or alteration by the same wrongdoer on any other item paid in good faith by the bank after the first item and statement was available to the customer for a reasonable period not exceeding fourteen calendar days and before the bank receives notification from the customer of any such unauthorized signature or alteration.

"(c) The preclusion under Subsection (b) does not apply if the customer establishes lack of ordinary care on the part of the bank in paying the item(s).

"(d) Without regard to care or lack of care of either the customer or the bank a customer who does not within one year from the time the statement and items are made available to the customer (Subsection (a) ) discover and report his unauthorized signature or any alteration on the face or back of the item or does not within three years from that time discover and report any unauthorized indorsement is precluded from asserting against the bank such unauthorized signature or indorsement or such alteration."

In discussing the foregoing provisions of the code, the writer at 18 A.L.R.3rd, p. 1400, makes these observations:

"Generally, a drawer can insist that the drawee recredit his account with the amount of any unauthorized payment, such as the payment of a check on which the drawer's name is forged, but a bank customer must exercise reasonable care and promptness to examine his bank statement and items; moreover, without regard to the care or lack of care of either the customer or the bank, a customer is precluded from asserting such unauthorized signature against the bank if within one year from the time the statement and items are made available to him he does not discover and report the unauthorized signature. * * *

"Within the one-year period, the negligence of the customer or the bank may affect the bank's liability to the customer for payment of a check on which the customer's name is forged as drawer."

In view of the fact that the bank has predicated its appeal solely on no evidence and insufficient evidence points, it becomes our duty to determine (1) whether there is any evidence of probative force to sustain the trial court's finding that Kidwell did not fail in its duty to exercise reasonable care in examining the bank statement and discovering the forgeries within a period of one year from the time it was reported to the bank, and (2) whether there is any evidence of probative force to support the trial court's finding that the bank failed to exercise ordinary care in paying the forged checks.

With respect to the first proposition, the record shows that for many years Mrs. Denman had been in the employment of the Kidwell Corporation. The officers thereof had complete trust and confidence in her and had never had any reason to suspicion that she was unfaithful. She had access to all the books and received the monthly bank statements in the mail from the bank. Some of the checks forged by

her were taken from the company checkbook. Upon the stubs representing those checks, she showed them to have been voided. Other checks written by her were upon blank checks which she secured from the printer of the checks. Each month, when the bank statements were received, Mrs. Denman would go through the checks and take out the forgeries. There is nothing in the record to suggest that any of the officers of the company knew of her conduct, nor is there anything to suggest any officer of the company was guilty of negligence substantially contributing to her unfaithful conduct. Graber Kidwell, the president of the company, testified that although he examined the bank statements and also examined the check stubs in the company checkbook, he never went through the cancelled checks or made any effort to reconcile them with the check stubs. It is without dispute that no other employee of the corporation performed such duties nor were assigned the task of reconciling the bank statement and the checks. While the record shows that Kidwell employed a certified public accountant to make an annual audit of the books of the company, there is no evidence that the certified public accountant or any other agent, officer or employee ever examined the statement and items within the fourteen day period contemplated by the Uniform Commercial Code.

As stated, the negligence of the depositor relied on by the bank is its failure to personally examine the statement and the checks and report the forgery and its negligence in entrusting the duty of examination to a dishonest employee.

In 10 Am.Jur.2d, Banks, sec. 14, p. 483, it is said:

"A depositor is not bound to make a personal examination of his passbook, statements, and returned checks; he fulfills his duty to the bank if he entrusts the examination to a competent and trustworthy employee, especially where there is no reason to believe that the result of the examination by the depositor would have been different, and even though the examination fails to disclose irregularities which might have been discovered had it been made by the depositor personally. * * *

"Where an agent to whom the duty of examination is entrusted is a dishonest employee who by forgery has obtained from the bank funds of his employer, and who does not disclose to his employer the circumstances which would naturally have been disclosed by a proper examination, the question whether the depositor has fulfilled his duty to the bank has given rise to a diversity of opinion. * * *"

According to a majority of authorities, the depositor is not chargeable with the knowledge of the forgeries possessed by the agent from the fact of his dishonesty so as absolutely to bar recovery, but the depositor is chargeable with a knowledge of such facts as an honest agent would acquire from an impartial examination. Other authorities, however, hold that the knowledge of the clerk or agent of the forgery is chargeable to the depositor and the bank cannot be held liable on the forgeries being subsequently discovered. 9 C.J.S. Banks and Banking § 356, p. 756. While we have been unable to find any precedent in this state, we are inclined to follow the majority view.

As we view the record, the conclusion is inescapable that an honest agent upon examining the bank statement and the cancelled checks or copies thereof would have readily discovered that Mrs. Denman was forging the name of Graber Kidwell and paying herself large amounts of money without authority. Therefore the depositor must be held to have failed in its duty to use reasonable care in discovering the forgeries. As a result the bank would not be liable on such forgeries unless it can be said that the bank was

also guilty of negligence in paying the forged items.

To the adoption of the Uniform Commercial Code, the rule was that if the bank's officers, before paying forged or altered checks, could by proper care and skill have detected the forgeries, then it cannot receive a credit for the amount of these checks, even if the depositor omitted all examination of his account. Southwest National Bank of Dallas v. H. F. Underwood & Co., 120 Tex. 83, 36 S.W.2d 141, 143. Thus, stated in the terms of negligence, the rule was that a bank which had been guilty of negligence in failing to discover an alteration or a forgery could not avoid liability on the ground that the depositor was negligent in failing to examine his balanced passbook, statement of account, or returned checks. Substantially the same rule is adopted in the Uniform Commercial Code if the customer establishes lack of ordinary care on the part of the bank in making payment. 10 Am.Jur.2d, sec. 519, p. 490; Uniform Commercial Code, sec. 4.406(b) (2).

With respect to the question of negligence on the part of the bank the trial court made the following findings of fact:

(A) The forgeries of Virginia Beavers Denman on the checks which were introduced into evidence and which were attached to Plaintiff's Second Amended Original Petition as "Exhibit A" were such that the Exchange Bank and Trust Company could, by the exercise of proper care and skill, have detected prior to charging said items to the account of Kidwell Construction Company, Inc. (Finding of Fact No. 22). (B) An official of the Exchange Bank and Trust Company advised the Certified Public Accountant, while he was at the Bank to pick up copies of forged checks during the investigation which Kidwell Construction Company, Inc., conducted after the forgeries were discovered, that the Exchange Bank and Trust Company did not have time to compare the signatures on all the checks that it processed. (Finding of Fact No. 23). (C) There was a lack of ordinary care under all the existing circumstances by the Exchange Bank and Trust Company in paying the forged checks in question, and this was a proximate cause of the loss and damage sustained by Kidwell Construction Company, Inc. (Finding of Fact No. 24). (D) The Exchange Bank and Trust Company did not exercise ordinary care in comparing the forged signature on the checks in question with the true signature of Graber Kidwell and the large volume of items which were assigned to the bank employees to process precluded an accurate comparison, and this was a proximate cause of the loss and damage sustained by Kidwell Construction Company, Inc. (Finding of Fact No. 25).

Graber Kidwell testified with regard to the quality of the forged signature that "a lot of them were very crude and ackward and some of them are—are fair." Kidwell's certified public accountant testified that in calling on the Exchange Bank with regard to the forgeries, Don E. Johnson, assistant vice president of the bank, made the statement, "Well, we can't check all the signatures because there's too many come through the bank." Johnson denied making such statement. Other employees of the bank testified that all the signatures upon all the forged checks had been compared with the signature card. The bank also called a witness from another bank who testified that he had examined the forged checks and compared them with the signature card and that he would have paid the checks had they been presented to him. There was other testimony as to the large volume of checks handled by the Exchange Bank as compared to other banks.

It is the province of the trier of the fact to determine what constitutes or-

dinary care under a particular situation or combination of circumstances. Oak Cliff Bank & Trust Company v. Aetna Casualty & Surety Company, 436 S.W.2d 165 (Tex. Civ.App., Dallas, 1968, n. w. h.); 40 Tex. Jur.2d, sec. 159, p. 697. In this instance the trial judge was the trier of the fact. In determining whether or not there is any evidence of probative force to sustain his finding of lack of ordinary care on the part of the bank, we are required to consider only that evidence favorable to his findings and the judgment entered thereon and to disregard all evidence to the contrary. 4 Tex.Jur.2d, sec. 839, p. 403; Cavanaugh v. Davis, 149 Tex. 573, 235 S.W.2d 972 (Tex.Sup., 1951); Arnold v. Caprielian, 437 S.W.2d 620 (Tex.Civ.App., Tyler, 1969, writ ref., n. r. e.). When viewed in a light most favorable to the judgment, we think there is at least some evidence of probative force to support the trial court's finding of a lack of due care in detecting the forged instruments. At most, the evidence is conflicting. Under such circumstances, the finding is binding on this court. Thus by reason of the bank's negligence, the preclusion against the depositor because of its own negligence, as contemplated by sec. 4.406(b) (2) of the Code, is not available to the bank as a defense. Uniform Commercial Code, sec. 4.406(c), supra; 18 A.L.R.3rd 1376, 1400. Consequently, the depositor, Kidwell, had a right to insist that the bank recredit its account with all unauthorized withdrawals occurring within one year prior to the time the bank had notice thereof.

After a careful review of all of the evidence in the record, both that in favor of the judgment and that contrary thereto, we have concluded that we cannot agree with the proposition that the judgment is so against the overwhelming weight and preponderance of the evidence so as to be manifestly wrong and unjust.

The judgment of the trial court is affirmed.