RICHMOND PERLEY ET AL. *v.* THE GLASTONBURY
BANK AND TRUST COMPANY ET AL.

RICHMOND PERLEY ET AL. *v.* ROBERT M. BURNEY

LOISELLE, BOGDANSKI, LONGO, BARBER and MACDONALD, Js.

Argued February 6—decision released April 27, 1976

*Frank DeNezzo,* for the appellant (named defendant and third-party plaintiff, the Glastonbury Bank and Trust Company).

*Martin A. Gould,* for the appellant (third-party defendant the Connecticut Bank and Trust Company).

*David C. Wichman,* for the appellees (plaintiffs).

MacDonald, J. Two defendant banks have appealed a judgment for the plantiffs in an action to recover from the Glastonbury Bank and Trust Company, hereinafter the drawee bank, the amount of a check drawn by the plaintiff Alice E. Perley

payable to two payees and paid by the drawee bank on a forged endorsement of one of the payees. The drawee bank impleaded as third-party defendant the payor bank, the Connecticut Bank and Trust Company.

The facts will emerge in greater detail in our discussion of the trial court's findings and conclusions, but, briefly summarized, involved a transaction between the plaintiffs Richmond and Alice E. Perley, husband and wife, and Geraldine C. Burney, a well-known real estate agent in Glastonbury, who was a neighbor and acquaintance of the Perleys. Prior to May, 1970, the Perleys had loaned Geraldine Burney $8,800 to invest in land, which debt had subsequently been repaid. In May, 1970, Geraldine Burney proposed another transaction with the Perleys, this time a loan for money to buy, together with her husband, Robert M. Burney, some land in East Glastonbury. The Perleys agreed and on, May 25, 1970, Geraldine Burney came to the Perley home with a note for $22,000 bearing the signatures of Robert M. Burney and Geraldine C. Burney. Richmond Perley was not at home and Alice Perley, at Geraldine Burney's direction, made out a check for $22,000, payable to Robert M. and Geraldine C. Burney. It subsequently developed that the signature of Robert M. Burney on the note was unauthorized and forged. Alice Perley delivered the check to Geraldine Burney believing that the Burneys were going to combine the proceeds with some of their own funds. Geraldine Burney deposited the check, duly endorsed by her and also bearing an endorsement by Robert M. Burney which subsequently proved to be unauthorized and forged, with the Connecticut Bank and Trust Company, hereinafter the payor bank, which did not

at that time make any attempt to verify the endorsements but credited the check as a deposit in Geraldine Burney's account. The check was processed through the Hartford clearing house stamped "Prior Endorsements Guaranteed" and was thereafter presented to the drawee bank, which debited the Perley's account in the amount of $22,000.

Geraldine Burney died shortly before the note came due, and the Perleys brought suit against Robert Burney and cited in as an additional defendant the administrator of the estate of Geraldine Burney. When the Perleys learned that Robert Burney had claimed that his signatures on both the note and check were forgeries, they notified the drawee bank and then instituted this action against that bank to recover the amount of the check. The two cases were consolidated by order of the court and tried together.

The defendant banks raised two principal defenses, claiming (1) that the Perleys did not intend Robert Burney to have any interest in the check and (2) that the Perleys were negligent in making no effort themselves to verify the signature of Robert Burney on the note. They also claimed initially that notice to the drawee bank did not satisfy the requirements of § 42a-4-406 (4) of the General Statutes, but since that claim was not briefed it is considered as having been abandoned. *State* v. *Beauton,* 170 Conn. 234, 236–37, A.2d

The state referee, acting as the court, rejected the banks' defenses, concluding that the Perleys intended both Robert and Geraldine Burney to have an interest in their check for $22,000 and that they had not been negligent. As a result, the court ruled that the unauthorized endorsement of Robert Bur-

ney was invalid and rendered the check ineffective for transfer. In their assignment of errors, the defendants have appealed the court's rejection of their defenses, claiming that its conclusions were not supported by the findings, and that it failed to include in the finding undisputed facts material to the case, which would support their claims that the Perleys were negligent and that they considered Robert Burney only a nominal payee.[1]

The parties are not in dispute over the basic law applicable to this case. At issue, rather, is whether the trial court's conclusions as to intent and negligence are consistent with the facts found. As a result, the scope of our review is limited. The trial court's conclusions are tested by the finding, and "[a] conclusion must stand unless it is legally or logically inconsistent with the facts found or unless it involves the application of some erroneous rule of law." *Hutensky* v. *Avon,* 163 Conn. 433, 437, 311 A.2d 92.

I

Considering first the claim that the Perleys did not intend Robert Burney to have any interest in the check, we observe, at the outset, that it was made out by Alice Perley to "Robert M. and Geraldine C. Burney," in the order in which their names appeared on the promissory note, and that "[a]n instrument payable to the order of two or more persons . . . if not in the alternative is payable to all of them and may be negotiated, discharged or enforced *only by all of them.*" (Emphasis added.) Section 42a-3-116 (b) of the General Statutes (§ 3-116 (b) of the Uniform Commercial Code). The

---

[1] The finding is not subject to any material correction and the additions thereto sought by the defendants pertain either to facts already included in different language or to facts which would not affect the decisive conclusions reached by the court.

check required the valid endorsement of both of the payees to be negotiated or deposited properly. Under § 42a-4-401 (1), a bank may charge against a customer's account only items that are "properly payable."

The defendant banks have sought to overcome the effects of the forgery by invoking the nominal payee rule of § 42a-3-405 (1) (b), which declares that a drawer is not harmed if the drawee bank's action on a check carries out the drawer's purpose.[2] The purpose of this rule is to place the risk of loss from a wrongful endorsement on the drawer when his intended payee in fact received the proceeds of the check and when no unintended person has taken an interest in the check as a consequence of the forged endorsement. *Gordon* v. *State Street Bank & Trust Co.*, 361 Mass. 258, 260, 280 N.E.2d 152. They claim that it is clear from the facts found that the Perleys intended Robert Burney to have no actual interest in the check, that the funds reached the person for whom they were alone intended, namely, Geraldine Burney, and that the plaintiffs, therefore, suffered no loss by reason of the forged endorsement. In support of this claim, they point to the Perleys' prior financial transactions with Geraldine Burney individually, Robert Burney's line of work separate from his wife's real estate business, and Alice Perley's testimony that she would have made the check out to anyone Geraldine Burney had requested. The court concluded, however, that the Perleys intended that the check be endorsed by both Robert M. and Geraldine C. Bur-

---

[2] "[General Statutes] Sec. 42a-3-405. IMPOSTORS; SIGNATURE IN NAME OF PAYEE. (1) An endorsement by any person in the name of a named payee is effective if . . . (b) a person signing as or on behalf of a maker or drawer intends the payee to have no interest in the instrument . . . ."

ney and that both should receive the proceeds of the check. Those conclusions were based upon the following subordinate findings of fact, no one of which was attacked by the defendants: that Geraldine Burney originally spoke to Alice Perley of the investment as a joint venture of both Geraldine and Robert Burney together to buy land in East Glastonbury; that the note Geraldine Burney presented to Alice Perley bore the signatures of both Robert M. and Geraldine C. Burney; that Geraldine Burney directed Alice Perley to make the check out to Geraldine C. and Robert M. Burney; and that Alice Perley delivered the check to Geraldine Burney believing that the Burneys were going to combine the proceeds of the check with some of their own funds.

"An attack on a conclusion is tested by the subordinate facts found. . . . The conclusion must stand unless it is legally or logically inconsistent with the facts found." *State National Bank* v. *Dick,* 164 Conn. 523, 531, 325 A.2d 235. The defendants have failed to show that the trial court's conclusion was so inconsistent with the undisputed findings of fact as to be in error. If the Perleys believed that the Burneys were going to combine the proceeds of the check with some of their own funds, then it is entirely consistent that it was the Perleys' intent that both Geraldine and Robert Burney have an interest in the check,[3] and we find that the record adequately supports the court's conclusion to that effect.

---

[3] Alternatively, the defendants argued that in giving her the check, Alice Perley made Geraldine Burney her agent so as to create a situation covered by § 42a-3-405 (1) (c) which provides: "An endorsement by any person in the name of a named payee is effective if . . . (c) an agent or employee of the maker or drawer has supplied him with the name of the payee intending the latter to

## II

The second principal defense advanced by the defendants was that the Perleys, by reason of their negligence, were estopped from placing liability on the defendant banks for the loss resulting to them from the forged check. Section 42a-3-406 of the General Statutes (§ 3-406 of the Uniform Commercial Code) provides: "Any person who by his negligence substantially contributes to a material alteration of the instrument or to the making of an unauthorized signature is precluded from asserting the alteration or lack of authority against a holder in due course or against a drawee or other payor who pays the instrument in good faith and in accordance with the reasonable commercial standards of the drawee's or payor's business." This states an exception to the general rule that when a loss is produced by the forged endorsement of a check, the burden falls upon the party who takes the check from the forger. See note, "Allocation of Losses from Check Forgeries under the Law of Negotiable Instruments and the Uniform Commercial Code," 62 Yale L.J. 417, 421, 462; *National Bank & Trust Co. of Central Pennsylvania* v. *Commonwealth,* 9 Pa. Cmwlth. 358, 305 A.2d 769, 771. As in any special defense, the burden of proof rested with the defendants to prove that the loss was due to the negligence of the Perleys. *Jackson* v. *First*

have no such interest." The court's conclusion that the Perleys intended the Burneys to have a joint interest in the check precludes the raising of that defense. Furthermore, the defendants offered no evidence indicating that Geraldine Burney was in any way managed or directed by the Perleys in her use of their loan, and "[a]n essential factor in an agency relationship is the right of the principal to direct and control the performance of the work by the agent." *McLaughlin* v. *Chicken Delight, Inc.,* 164 Conn. 317, 322, 321 A.2d 456.

*National Bank of Memphis, Inc.,* 55 Tenn. App. 545, 551, 403 S.W.2d 109. It modified the common-law concept of contributory negligence to the extent that negligence on the part of the plaintiff has no effect unless the defendant has acted in accordance with reasonable commercial standards.[4]

The defendants have relied heavily upon a case recently decided by this court, *Fidelity & Casualty Co.* v. *Constitution National Bank,* 167 Conn. 478, 356 A.2d 117, which also involved an action to recover from a defendant drawee bank the proceeds of checks on which the payees' endorsements were forged and which the bank honored. In that case, discussing the applicability of § 3-406 of the Uniform Commercial Code, we commented (p. 483) that negligence as used in the section means "the failure to exercise 'reasonable' or 'ordinary' care" and that "[b]y 'reasonable care' in cases involving a question of negligence we mean the care which 'the ordinarily prudent person under the circumstances' would exercise." We further observed (p. 488) that "drawers are held to be precluded from asserting the unauthorized signature against a drawee where such negligence has been a key to the success of the forgery and, thus, substantially contributed to the making of the unauthorized signature within the meaning of § 3-406 of the code."

The facts in *Fidelity* were somewhat similar to those of the present case, but there are several important distinctions. The plaintiff there was the subrogee of the rights of a finance company whose

---

[4] "[General Statutes Annotated § 42a-3-406, comment six] 6. The section protects parties who act not only in good faith, (Section 1-201) but also in observance of the reasonable standards of their business. Thus any bank which takes or pays an altered check which ordinary banking standards would require it to refuse cannot take advantage of the estoppel."

manager had drawn and issued checks to purported applicants for automobile loans. The manager had given the checks for delivery to a car salesman who had previously done business with the finance company and who initiated the transaction, submitting to the manager loan applications and promissory notes allegedly signed by the applicants. The notes were forged and, instead of delivering the checks as instructed, the salesman and an accomplice forged the signatures of the named payees. The checks were cashed and the defendant drawee bank paid them when the intermediary banks presented them for payment. In that case, we found error in the court's judgment for the plaintiff drawer and corrected the finding (1) to include the fact that the finance company manager had failed to conduct a credit investigation and (2) to delete the finding that the loan applications submitted by the salesman to the finance manager were signed, stating (p. 491): "If there were no signatures on the loan applications presented to . . . [the finance manager], then, he may well have been obliged to challenge the authenticity of the documents, and to question whether the nine named individuals had indeed ever really applied for the loans." There, we ordered a new trial on the ground that the trial court's conclusion of no negligence by the drawer may have been influenced by an erroneous finding and was unsupported by the subordinate facts and, in so ordering, we noted (p. 484) the body of cases from other state courts which have held that failure of a drawer to verify information on reports prior to drawing and issuing checks pursuant thereto amounts to negligent business conduct.

The defendant banks argue that the Perleys' failure to make any effort to validate the signature

of Robert Burney on the promissory note or otherwise to verify his involvement in the proposed real estate deal, combined with their knowledge that Robert Burney did not involve himself in his wife's real estate business, constituted such negligence on their part as to preclude recovery of their loss from the banks.

Section 42a-3-406 does not attempt to define what constitutes negligence sufficient to bar an individual from claiming that there has been a forgery other than to require that the negligence substantially contribute to the forgery, and, beyond that guideline, the question is one to be determined by the trier of fact in each case. "The conclusion of negligence or freedom from it is ordinarily one of fact. Where the conclusion reached is a reasonable one, the decision of the trial court will not be disturbed." *Tarzia* v. *Koopman,* 147 Conn. 540, 544, 163 A.2d 320. Here, the trial court concluded that the plaintiffs were not negligent in failing to authenticate Robert Burney's signature. It pointed out that Alice Perley had no reason to suspect Geraldine Burney, that the Perleys and Burneys were neighbors, that the Perleys had known Geraldine Burney for sixteen years as a successful real estate agent, and that they had once before transacted business profitably with her. Negotiations for the loan extended over three to four weeks, and, as noted above, Alice Perley gave the check to Geraldine Burney believing that the Burneys were going to combine the proceeds of the check with some of their own funds.

We find that the court's conclusion that the Perleys were not negligent is adequately supported by the findings and reflects the proper standard of care.

It is important to note that *Fidelity* arose in a highly commercial setting, and we stated there (p. 484) that the test of negligence under § 42a-3-406 would be the conduct of a "prudent person *in the position of the finance company's manager.*" (Emphasis added.) Here we are concerned with parties engaged in more informal financing. In *Fidelity,* we clearly implied that if the loan applications had indeed been signed by purported applicants, the finance manager would have been exercising due care in drawing checks to the named individuals, based in part on the finance company's previous dealings with the salesman. Here, the circumstances did not justify any sort of formal loan application between the Perleys and the Burneys, and Geraldine Burney did present to Alice Perley a promissory note bearing the signatures of both Burneys. Furthermore, Geraldine Burney was present when Alice Perley drew the check, while in *Fidelity* the parties dealt with each other by telephone and through the mails and did not personally know each other. We cannot say that as a matter of law an "ordinarily prudent person under the circumstances" of dealing with Geraldine Burney would have reason to suspect that she was misrepresenting the transaction and intending to forge the signature of her copayee.

In addition to the support in the findings of fact for the court's conclusion that the Perleys were not negligent, the defendants failed to maintain the burden imposed by § 42a-3-406 of showing affirmatively their own due care. They attack the Perleys' failure to make any sort of credit investigation of Robert Burney's involvement in the deal, but they themselves made no effort to verify his signature on the check. An officer of one of the defendant

banks testified that it was customary bank procedure to accept such a check as presented without authenticating the endorsements and to rely on its ability to charge the account of the payee if the endorsements proved invalid. Such procedure may well be common among banks, but the defendants failed to show that such conduct is reasonable. An examination of signature cards to determine the genuineness of endorsements may not be entirely practical under modern banking methods, but we do not feel that that necessarily relieves banks of the risk of loss from payment on forged checks. See *Jackson* v. *First National Bank of Memphis, Inc.*, 55 Tenn. App. 545, 553, 403 S.W.2d 109. The law places the risk of loss from forged endorsements on the drawee bank unless it can affirmatively prove the drawer's negligence and its own due care. Such a legal presumption accords with the practical realities of commercial banking transactions since the banks are in a better position than private parties such as the Perleys to secure means of insurance against losses by forgeries. In fact, in *Fidelity* the plaintiff insurance company was the subrogee of the drawer finance company which had executed a blanket bond to protect it against forgeries. *Fidelity & Casualty Co. of New York* v. *Constitution National Bank,* supra, 481.

The defendants also have relied upon the previously mentioned Massachusetts case of *Gordon* v. *State Street Bank & Trust Co.*, 361 Mass. 258, 280 N.E.2d 152, which involved the same general factual pattern of a drawer of a check suing the drawee bank for payment on the forged endorsement of one of two payees. There the court found the drawer liable for the loss, but the trial court had expressly found that the drawer intended the

bona fide endorser alone to receive the proceeds of the check and that the drawer was negligent in accepting a forged note. Here we have contrary findings by the trial court on the same issues, and they are adequately supported by the record. Accordingly, we have reached an opposite result.

There is no error.

In this opinion the other judges concurred.