Argued and submitted June 15, 1983, affirmed January 25, 1984

# MEDFORD IRRIGATION DISTRICT et al,
## *Respondents,*

*v.*

# WESTERN BANK,
## *Third Party Plaintiff - Appellant,*

### (81-1914-J-1; CA A26603)

676 P2d 329

G. Jefferson Campbell, Jr., Coos Bay, argued the cause and filed the briefs for appellant.

H. Dewey Wilson, Medford, argued the cause for respondents. With him on the brief were Douglass H. Schmor, Brophy Wilson & Duhaime, Medford, and Ronald E. Rhodes, Portland.

Before Richardson, Presiding Judge, and Van Hoomissen and Newman, Judges.

RICHARDSON, P. J.

Van Hoomissen, J., dissenting.

## RICHARDSON, P. J.

Defendant Western Bank (Western) appeals from a summary judgment in favor of plaintiffs Medford Irrigation District and Oregon Automobile Insurance Company. The issue is whether there is any genuine issue of material fact between the parties. We affirm.[1]

The record shows that between September 25 and October 17, 1980, the District's bookkeeper forged the name of its manager on several checks drawn on its account with Western. Western paid the checks and debited the District's account. Later, the District sought recovery of the face value of the checks, interest, costs and attorney fees.

It is conceded for purposes of the summary judgment motion that plaintiff was negligent in not supervising the bookkeeper and in not auditing the accounts and reviewing the bank statements. It is also conceded that plaintiff's negligence substantially contributed to the forgeries. ORS 73.4060. Plaintiff argues that Western did not follow reasonable commercial banking standards, ORS 73.4060, and failed to exercise ordinary care, ORS 74.4060, in paying the forged checks.

Ordinarily the law places the risk of loss from forgeries on the bank. Any unauthorized signature is generally "wholly inoperative as that of the person whose name is signed." ORS 73.4040. Because a forged signature is wholly inoperative, a forged check is not "properly payable," ORS 74.4010, and a bank cannot debit the depositor's account. If, however, the depositor's negligence substantially contributes to the forgery, the depositor is precluded from asserting the improper payment against a bank which pays the check in good faith and in accordance with reasonable commercial standards of the banking industry. ORS 73.4060. Also, if the depositor fails to exercise reasonable care in examining its bank statement and promptly reporting any unauthorized debits to the bank, the depositor is precluded from asserting

---

[1] Oregon Automobile Insurance Company paid the District $10,000 pursuant to a Public Employes' Bond. It thus became subrogated to the District's claim against Western in that amount. Western has not appealed from summary judgment in favor of third-party defendant Central Point State Bank.

the unauthorized payment unless it establishes lack of ordinary care on the part of the bank in paying the check. ORS 74.4060.

Western submitted affidavits and depositions in opposition to plaintiffs' motion for summary judgment. It argues that there is a genuine issue of material fact as to whether it exercised ordinary care and whether its procedures comported with reasonable commercial banking standards. Western utilizes a computer check payment system. Checks for a face amount under $5,000 are paid without human intervention or "sight review" of the signatures. Checks are received for payment at Western's data processing center in Portland, and, unless there is a "hold" or a "stop payment" order for a check, it is paid automatically by computer. The cancelled checks are ultimately forwarded to the customers along with the bank statement. The computer is programmed to "kick out" checks with a face amount of $5,000 or more. Absent specific instructions from a customer, only checks of $5,000 or more are individually reviewed for authorized signatures or alterations.

Western's affidavits disclose that, before the events involved in this case, it concluded that the cost of reviewing checks for unauthorized signatures greatly exceeded the benefits. In essence, the affidavits show that a small number of forgeries was detected by individual review of checks, while the cost of that review was approximately $200,000 per year. Western contends that the procedure it utilizes is in conformity with methods used by most banks of its size throughout the United States. It argues that it is a fact question whether its procedures comport with reasonable commercial standards and whether it exercised ordinary care. Western agrees that both standards express essentially the same duty.

The reasonableness of commercial banking standards must be analyzed in the context of a bank's duty in relation to the depositor's account. Although a procedure may be common throughout the banking industry, it is not, by that fact alone, a reasonable procedure. Implied in the relationship between a bank and its checking account depositors is a contractual undertaking on the part of the bank that it will only discharge its obligation to a depositor on an authorized

signature. ORS 73.4040 specifies that an unauthorized signature is wholly inoperative, and a check with an unauthorized signature is not properly payable by the bank. ORS 74.4010. The responsibility of the bank is to use ordinary care in paying only checks with authorized signatures. Thus, the procedure utilized must reasonably meet that responsibility to be considered due care or reasonable commercial banking standards in the context of ORS 73.4060 or 74.4060.

■      The Uniform Commercial Code does not set out particular procedures or standards that the banking industry must follow or attempt to define what ordinary care or reasonable commercial standards are. The Official Comment to UCC § 4-103 (ORS 74.1030) provides that a bank is liable for losses caused by its failure to exercise ordinary care.

> "* * * In view of the technical complexity of the field of bank collections, the enormous number of items handled by banks, the certainty that there will be variations from the normal in each day's work in each bank, the certainty of changing conditions and the possibility of developing improved methods of collection to speed the process, it would be unwise to freeze present methods of operation by mandatory statutory rules." Uniform Commercial Code, Official Edition, 360 (1957).

We do not hold that a bank must adopt a particular procedure, such as "sight review," in order to comply with the statutory mandate. We do hold that the procedure used must reasonably relate to the detection of unauthorized signatures in order to be considered an exercise of ordinary care or reasonable commercial banking standards. Western's approach is automatically to pay all checks under $5,000 without any procedure to detect unauthorized signatures on those items. While that approach, based on considerations of cost and efficiency, may be a prudent business decision and followed by most banks, it does not meet the bank's responsibility under the statutes.

■      In *Perley v. Glastonbury Bank & Trust Co.,* 170 Conn 691, 368 A2d 149 (1976), the plaintiff sought to recover the amount paid by the defendant banks on forged checks. Regarding the banks' claim that they had exercised ordinary care and followed reasonable commercial banking standards, the court said:

"* * * An officer of one of the defendant banks testified that it was customary bank procedure to accept such a check as presented without authenticating the endorsements and to rely on its ability to charge the account of the payee if the endorsements proved invalid. Such procedure may well be common among banks, but the defendants failed to show that such conduct is reasonable. An examination of signature cards to determine the genuineness of endorsements may not be entirely practical under modern banking methods, but we do not feel that that necessarily relieves banks of the risk of loss from payment on forged checks. * * *" 170 Conn at 702.

*See also Hanover Ins. Companies v. Brotherhood State Bank,* 482 F Supp 501 (D Kan 1979); *Jackson v. First Nat'l Bank, Memphis,* 55 Tenn App 545, 403 SW 2d 109 (1966). We hold as a matter of law that the bank failed to exercise ordinary care and that the procedures adopted are not reasonable commercial practices.

Western contends that, if it is determined that it did not exercise due care or follow reasonable commercial practices, there remain issues of fact as to causation and damages. This argument is premised on ORS 74.1030(5):

"The measure of damages for failure to exercise ordinary care in handling an item is the amount of the item reduced by an amount which could not have been realized by the use of ordinary care, and where there is bad faith it includes other damages, if any, suffered by the party as a proximate consequence."

Western presented the affidavit of one of its officers to the effect that he had reviewed the checks in issue and had concluded that the forgeries were so well done that they would not have been detected by individual scrutiny. Western argues that it is entitled to a fact determination whether an exercise of ordinary care would have resulted in rejection of the checks. It contends that a fact finder could conclude that some or all of the checks would have been paid even with the use of sight review and that therefore it would not be liable for those checks under ORS 74.1030(5).

The structure of the Uniform Commercial Code creates a contractual arrangement between a bank and a depositor to the effect that the bank will pay only items which are properly payable. ORS 74.4010. An item with an unauthorized signature is not properly payable. If the customer's

negligence substantially contributes to the making of the unauthorized signature, it cannot assert that the item is not properly payable unless the bank is also negligent. If it is determined that the bank is negligent, the defense of the customer's negligence is not available, and the bank is strictly liable for improperly debiting the customer's account. There is thus no issue as to the causal relationship between the bank's lack of due care and the customer's loss if the loss is established.

Western cites three cases in support of its argument. *American Heritage Bank and Trust Co. v. Isaac,* 636 P2d 1296 (Colo App 1981); *Dinerman v. National Bank of North America,* 89 Misc 2d 164, 390 NYS2d 1002 (1977); *Marcoux v. Van Wyk,* 572 F2d 651 (8th Cir), *cert dism* 439 US 801 (1978). *Isaac* involved the bank account of a partnership which was in the business of purchasing cattle. One of the partners signed checks and withdrew money from the account, allegedly for his own purposes. The checks were improperly endorsed. The lower court found that the partnership was negligent as well as the bank and gave judgment for the depositor. On appeal, the court agreed that there was evidence to support the finding of negligence but reversed the judgment, because there was no evidence to support the finding that the partnership suffered a loss. The records of the partnership showed that, although the checks were unauthorized, the partnership in fact received title to the cattle for which the checks had purportedly been issued. Any loss, the court said, was due to internal partnership problems and not to improper debiting of the partnership account. The court cited section 4-103 of the Uniform Commercial Code, which is identical to ORS 74.1030, as the basis of its ruling that a causal connection must be shown.

The dissent in that case criticized the majority for proceeding on general negligence principles when the relationship between the bank and its depositor is one of contract. One author has criticized the majority decision as follows:

> "The *Isaac* case is wrong because the court forgot about the UCC. As the dissent points out, the drafts were not 'properly payable' insofar as they were debited to the partnership account even though drawn on a corporation. The bank's duty to honor only 'properly payable' items under Section 4-401 [ORS 74.4010] does not hinge on negligence; it is a kind of strict liability born of an implied contract between

bank and depositor." Clarke, *The Law of Bank Deposits* (1982 cumulative supplement No. 1), p S 2.

As the dissent and the commentary point out, the majority's reference to section 4-401 (ORS 74.4010) is based on a misapplication of the Uniform Commercial Code.

*Dinerman v. National Bank of North America, supra,* is distinguishable. In that case an attorney issued two drafts to a gambling casino for gambling losses. The drafts were paid by the bank and his account was debited. The plaintiff claimed that he had a specific agreement with the bank to pay only checks which were made on the bank's preprinted form. His cause of action was stated in terms of violation of that agreement and for negligent dishonor of that agreement. The court found that no such agreement existed and that the plaintiff had not shown a loss because he had in fact received benefits at the gambling casino. Although the court cited the New York equivalent of ORS 74.4010, that statute was not the principal basis for the decision. In essence, the court held that the plaintiff had not established that the bank violated any agreement and that the items were "properly payable." That case did not involve payment of an item with an unauthorized signature.

*Marcoux v. Van Wyk, supra,* is also distinguishable. The plaintiffs, who were cattle sellers, delivered cattle to a buyer in exchange for sight drafts drawn on the buyer's account with the First National Bank of Eldora, Iowa. The plaintiffs deposited the drafts in their account, and they were forwarded to the bank for collection. The bank held the drafts beyond its deadline, pursuant to instructions from the buyer. The drafts were subsequently returned to the plaintiffs' bank uncollected. The buyer was insolvent. The plaintiffs brought an action against the bank, claiming that it was negligent in holding the drafts beyond the deadline. They claimed that, if the drafts had been timely returned, they could have collected the funds directly from the buyer. The court held that the bank's negligence was not the cause of the plaintiffs' loss, because the buyer was insolvent at the time the bank received the drafts and they would not have been collected if properly returned. The action was in negligence, not for violation of a contractual duty to pay only authorized items.

We conclude that, because Western failed to exercise ordinary care or to follow reasonable commercial banking

practices, it is foreclosed from asserting plaintiff's negligence and is liable for paying the face amount of the forged checks. There is no issue of fact as to Western's liability or the amount. The court did not err in granting summary judgment for plaintiff.

In its final two assignments, Western contends that the court erred in allowing plaintiff's claim for attorney fees. It first contends that plaintiff is not entitled to any attorney fees; and, second, if it is, that Western was denied a hearing on the amount. Plaintiff's claim for attorney fees from Western relates to the attorney fees incurred in a separate action against the bookkeeper to recover the amounts misappropriated by her. Plaintiff obtained a judgment against the bookkeeper of $68,757.56 and actually recovered $29,386.87. The amount recovered from the bookkeeper would be offset against the total amount for which Western is liable. Plaintiff's claim for attorney fees is based on the equitable rule that the fees for the efforts of an attorney that result in recovery of a fund for the benefit of various persons are reimbursable from the fund. It contends that the amounts collected from the bookkeeper were for the benefit of Western and that it should be compensated from that fund for attorney fees expended in its creation. Plaintiff cites, *inter alia, State Farm Mut. Auto. Ins. v. Clinton,* 267 Or 653, 518 P2d 645 (1974).

Western contends that its liability is limited to the face amount of the forged checks and that plaintiff is not entitled to "consequential damages" for attorney fees expended in obtaining recovery from the bookkeeper. There is no contractual or statutory right to attorney fees in this action against Western. However, as the court held in *State Farm Mut. Auto. Ins. v. Clinton, supra,* attorney fees may be awarded on equitable principles despite the lack of other authority for the award. Here, plaintiff's efforts in recovering money from the bookkeeper inured solely to the benefit of Western. It would have had to pay the full amount of the forged checks if plaintiff had not recovered a substantial amount from the bookkeeper. The fund obtained from the bookkeeper is to be credited against any judgment in this action. It is equitable that plaintiff recover the attorney fees expended in providing that fund before the amount is offset against the judgment.

Western's second contention respecting the award of attorney fees relates to the procedure in setting the amount. In accordance with ORCP 68C, plaintiff filed a verified cost bill, which included a claim for attorney fees. The cost bill was accompanied by an affidavit of the attorney who handled the action against the bookkeeper, documenting the time expended and the reasonableness of the fee. Western filed objections pursuant to ORCP 68C(4)(c):

> "Upon service and filing of timely objections, the court, without a jury, shall hear and determine all issues of law or fact raised by the statement and objections. Parties shall be given a reasonable opportunity to present evidence and affidavits relevant to any factual issue."

The trial court awarded attorney fees but did not hold a factual hearing. Western claims that it was denied a hearing and asks that the attorney fees award be reversed and the case remanded for a hearing on the cost bill. Western's objections to the cost bill raised only an issue of law respecting plaintiff's right to attorney fees. The factual issue was not contested by the filed objections. ORCP 68C(4)(c) requires a hearing only on issues of fact. Because there was no issue of fact raised by the objections, the court did not err in failing to hold an evidentiary hearing on the cost bill.

Affirmed.

**VAN HOOMISSEN, J.,** dissenting.

Viewing the record on summary judgment in the light most favorable to defendant, *Stanfield v. Laccoarce,* 288 Or 659, 607 P2d 177 (1980), I conclude that there is a genuine issue of material fact between the parties, *i.e.,* whether defendant acted in a commercially reasonable manner and exercised ordinary care in the payment of the checks drawn on plaintiff's account. Therefore, I respectfully dissent.

Plaintiff's negligence substantially contributed to the forgeries. Therefore, plaintiff is precluded from asserting its claim if defendant paid the checks in good faith and in accordance with reasonable commercial banking standards. ORS 74.4060. Defendant contends that its procedures are much more likely to detect a forgery than is the "sight review" procedure proposed by plaintiff.

It would appear, almost by definition, that a practice followed by most banks comports with reasonable commercial banking standards. The question then is whether defendant exercised ordinary care in the payment of the checks. That question should be answered by a trier of fact. *See Transamerica Ins. Co. v. U.S. Nat'l Bank,* 276 Or 945, 955, 558 P2d 328 (1976).