[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiffs filed this action seeking judgment on a promissory note made by the corporate defendant, Homecrest Builders and Remodelers, Inc., ("Homecrest") and guaranteed by both of the individual defendants, Christopher C. Noble and Stephen C. Rand. This suit was later withdrawn against Homecrest. One of the two plaintiffs, Ronald R. Bonito, failed to appear for trial and was non-suited pursuant to Practice Book Section 351. Both remaining defendants, Noble and Rand, filed pro se appearances and both initially failed to appear for trial. The court therefore entered defaults under Practice Book Section 351 against both defendants on the complaint as well as nonsuits on the defendants' counterclaims. Noble, an attorney who practices law in Connecticut, appeared approximately one hour late for trial and the court granted his request that the CT Page 8667 default and nonsuit against him be vacated. The court then heard the claim of the plaintiff Anthony A. Fappiano against the defendant Noble, as well as Noble's counterclaim.
On January 20, 1989 the plaintiffs Bonito and Fappiano sold two building lots in Beacon Falls, Connecticut to Homecrest for a purchase price of $180,000.00. The purchase price was paid with $10,000.00 in cash and a five-month, non-interest-bearing promissory note for $170,000.00 to be secured by a mortgage on the two lots. Noble, the attorney for Homecrest, prepared the promissory note and mortgage. At closing Bonito and Fappiano expressed concern about how Homecrest would be able to pay the note at its maturity on June 1. Bonito was so concerned that he asked for a post-dated check for his half of the balance due and he also asked Rand, the president of Homecrest, and Noble to personally guarantee the note. Rand and Noble agreed to the guaranties and Noble hand wrote the guaranties at the end of the note: "1/20/89 I hereby guarantee payment of the foregoing obligation of Homecrest Builders and Remodelers, Inc." Both Rand and Noble signed the guaranties and the closing then proceeded to conclusion. It is undisputed that Homecrest never paid any portion of the promissory note. Rand and Noble also did not make any payment on the note, which remains wholly unpaid.
Noble filed a special defense in this action alleging that his guaranty is unenforceable because of a lack of consideration. At the conclusion of the evidence at trial, Noble and counsel for Fappiano asked for time to file memoranda of law. It was agreed that both parties would file their memoranda on July 6, 1993.
Noble never filed his memorandum of law. At the court's direction, the clerk of the court recently called Noble and confirmed that Noble had not submitted a memorandum of law. Although Noble mentioned to the clerk that he might file a motion for extension of time, no such motion has been filed. If such a motion were to be filed, it is unlikely that it would be granted given that Noble waited until over two months after the due date to seek an extension. Given Noble's failure to take any action, the case appears ripe for decision.
Noble bears the burden of proving to the court his special defense that there was no consideration for his guaranty. Perley v. Glastonbury Bank Trust Co., 170 Conn. 691, 698
CT Page 8668 (1976). He failed to sustain this burden. Noble testified that he signed the guaranty reluctantly and received nothing for his guaranty other than having the closing be completed. He testified that he signed the guaranty to avoid damaging Homecrest and Rand, his clients. Noble felt that if he and Rand did not sign, Bonito and Fappiano would not permit the closing to conclude.
In Superior Wire Paper Products, Ltd. v. Talcott Tool and Machine, Inc., 184 Conn. 10 (1981), the defendant guarantors contended that their guaranties were unenforceable for a lack of consideration. They claimed that the plaintiff did not rely on the guaranties until long after they were given and that the plaintiff was not threatening to sue at the time the guaranties were given so there had not been any forbearance. In finding the guaranties enforceable, the Supreme Court noted first that the "modern law of contracts" makes guaranties enforceable on the basis of reliance, citang Restatement (Second) Contracts 89c (Tent. Ed. 1973). Id. at 20. Applying traditional standards of consideration the Supreme Court found that the defendants knew that their execution of guaranties would induce further shipments of goods by the defendant to the principal debtor and the Court held that was sufficient consideration for the guaranties.
The same Restatement Section was the basis for a decision by the Texas Appeals Court on facts quite similar to those before this court. Beltran was an attorney for two borrowers. He had no other relationship with the borrowers except as their attorney. Beltran signed a limited guaranty of the borrowers' promissory note to a bank. The Appeals Court found that consideration had been given because the facts met the standard set forth in Restatement (Second), Contracts 88: "A promise to be a surety . . . is binding if . . . (c) the promisor should reasonably expect the promise to induce action or forbearance of a substantial character on the part of the promisee or a third person and the promise does induce such action or forbearance." Beltran v. Groos Bank, N.A., 755 S.W.2d 944 (Tex.App. 1988). (Section 89c of the Tentative Draft (1973) was later codified as Section 88(c).) The court further found that it is not necessary for the consideration to pass to the guarantor; it is sufficient if the primary debtor receives the benefit. Id. at 948.
Noble admitted in his testimony that the transfer of title CT Page 8669 to the two building lots closed as a result of his signing the guaranty. The plaintiffs Bonito and Fappiano sought the additional security of guaranties from Rand and Noble prior to closing because of their apprehension (later shown to be prescient) about whether the $170,000.00 note would be paid. Moreover, after acquiring title to the two lots from the plaintiffs, Homecrest, represented by Noble, went to a second closing later in the day on January 20, 1989. At that closing Homecrest mortgaged the two lots for $75,000.00 to an investment company. Therefore, Noble's guaranty not only induced the plaintiffs to transfer title to the lots, it further resulted in Homecrest receiving some $64,000.00 in cash as a result of mortgage financing on the two lots.
Our Supreme Court has recognized that consideration, although not technically a form of estoppel, does share some of the same elements as an estoppel in pais, because if a person can induce another to change his situation because of a promise and then be allowed to deny the validity of the promise, "he is thus perpetrating a fraud, and injuring another by a false promise. The law will not permit this but will hold him to the fulfillment of his undertaking." Finlay v. Swirsky, 103 Conn. 624,631 (1925). The circumstances of the present case are particularly appropriate for enforcement of Noble's guaranty. The plaintiffs, both laymen, expressed concern about repayment of the note and sought the guaranties of Rand and Noble for additional recourse for payment. Noble, an attorney, should not be permitted to give his guaranty, knowing that the plaintiffs would rely on it and that it would induce them to complete the closing only to contend later, when the note remained unpaid, that the guaranty is unenforceable. The evidence shows that the guaranty is enforceable under both the modern law of contracts as set forth in the Restatement Section 88 as well as under traditional standards of consideration.
The court finds against the defendant Noble on his special defenses. Judgment is entered on the complaint against Rand (by default) and Noble for the principal balance of the note, $170,000.00 plus interest at the legal rate from the maturity of the note on June 1, 1989 until the date judgment is rendered. Plaintiff Fappiano shall file an affidavit calculating such interest within ten (10) days from the filing of this memorandum of decision. The note also provides for payment by the defendants of costs of collection including reasonable attorneys' fees. The plaintiff Fappiano shall also file within CT Page 8670 ten (10) days an affidavit stating the amount of attorneys' fees claimed and how such amount is calculated. Defendant Noble shall have ten (10) days after the filing of the affidavits to file any counter-affidavit. The court will then enter a supplemental judgment for interest and attorneys' fees.
Noble's counterclaim is a rambling account of Noble's various disputes with the plaintiffs. The gravamen of the counterclaim is a grievance allegedly filed by Fappiano against Noble on October 10, 1989. The counterclaim alleges that the grievance contained false allegations and that it was filed to coerce payment on the guaranty. It further alleges that the filing of the grievance under these circumstances is a violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat.42-110a, et seq., and claims compensatory and punitive damages plus attorneys' fees.
Judgment is entered for the plaintiffs on the counterclaim. Defendant Noble presented no evidence at all concerning the grievance or any damage resulting to Noble as a consequence thereof. Noble failed to sustain his burden of proof with respect to the allegations of the counterclaim.
CHRISTINE S. VERTEFEUILLE SUPERIOR COURT JUDGE