The TRAVELERS INDEMNITY COMPANY, a/s/o American Lung Association, Plaintiff,

v.

Nancy STEDMAN and Merrill Lynch, Pierce, Fenner & Smith Incorporated, Defendants,

v.

MAIN LINE FEDERAL SAVINGS BANK, Counter–Defendant.

No. 93–3684.

United States District Court, E.D. Pennsylvania.

Nov. 16, 1995.

Reconsideration Denied Dec. 28, 1995.

Elizabeth K. Ainslie, Philadelphia, PA, Gary P. Lightman, Bruce J. Meltzer, Lightman & Associates, Philadelphia, PA, for Travelers Indemnity Company, a/s/o American Lung Association.

William A. De Stefano, De Stefano & Warren, P.C., Philadelphia, PA, for Merrill Lynch, Pierce, Penner & Smith Incorporated.

Gerald E. Burns, III, William J. Brennan, Virginia Hinrichs McMichael, Dilworth, Paxson, Kalish & Kauffman, Philadelphia, PA, for Main Line Federal Savings Bank.

## *MEMORANDUM*

LOWELL A. REED, Jr., District Judge.

Plaintiff the Travelers Indemnity Company ("Travelers") brings this action as subro-

gee of the American Lung Association of Philadelphia and Montgomery Counties ("ALA") against defendants Nancy Stedman and Merrill Lynch, Pierce, Fenner and Smith Incorporated ("Merrill Lynch"). This action arises out of losses sustained by ALA because of forgeries committed by defendant Stedman with respect to checks drawn on the Working Capital Management Account maintained by ALA with Merrill Lynch. This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332 as the parties are of diverse citizenship and the amount in controversy is in excess of $50,000, exclusive of interest and costs.

Currently before the Court is the motion by plaintiff for summary judgment against Merrill Lynch and the cross-motion by Merrill Lynch for summary judgment. (Document Nos. 23, 25) For the following reasons, the motion by plaintiff will be granted in part and denied in part and the cross-motion by Merrill Lynch will be granted in part and denied in part.

## I. BACKGROUND

The following facts are undisputed.

In 1990, 1991 and 1992, while she was employed by ALA, Nancy Stedman illegally deposited in her own bank account or cashed for her own benefit seventeen checks drawn on the Working Capital Management Account ("WCMA") maintained by ALA with Merrill Lynch. On twelve of those checks, totalling $100,215.31, she forged one or both of the maker signatures; the numbers for these checks were: 1980, 1982, 2390, 2475, 2609, 2675, 2783, 2918, 3061, 3128, 3131 and 3180. On four of those checks, totalling $29,-211.92, she only forged the endorsements; the numbers for these checks were: 1639, 1731, 1883 and 2142. One check is no longer at issue, as plaintiff has now conceded that Merrill Lynch is entitled to judgment with regard to check number 1586 which was for $200.00. *See* memorandum of plaintiff in reply to response of defendant Merrill Lynch at 15.

In April 1992, the new Executive Director of ALA, Patty Cline, discovered the forgeries by Stedman. ALA then submitted a claim to plaintiff pursuant to its insurance policy with plaintiff, and plaintiff paid ALA $124,568.23, which was the amount of the seventeen checks minus $5,059.00 repaid by Stedman to ALA. Then, as subrogee of ALA, plaintiff brought this instant action against Stedman, Merrill Lynch, and Main Line Federal Savings Bank ("Main Line"), where plaintiff had deposited some of the checks. All of claims by plaintiff against Main Line were dismissed by an Order of this Court dated December 6, 1994, although Main Line remains a party in this case as a defendant to the cross-claim of Merrill Lynch.

## II. DISCUSSION

Under Federal Rule of Civil Procedure 56(c), summary judgment may be granted when, "after considering the record evidence in the light most favorable to the nonmoving party, no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." *Turner v. Schering–Plough Corp.*, 901 F.2d 335, 340 (3d Cir.1990). For a dispute to be "genuine," the evidence must be such that a reasonable factfinder could return a verdict for the nonmoving party, and for a fact to be "material" it must be one "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The nonmoving party must produce evidence to support its position, and may not rest on conclusory allegations or bare assertions alone. *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888, 110 S.Ct. 3177, 3188, 111 L.Ed.2d 695 (1990).

Plaintiff and Merrill Lynch agree that Pennsylvania law applies to this case and that under the Pennsylvania adoption of the Uniform Commercial Code ("U.C.C.") a drawee bank is generally liable to a drawer customer for paying on a check containing a forged maker signature. *See* 13 Pa.Cons. Stat.Ann. §§ 1201 (defining "unauthorized signature or indorsement" as including a forgery), 3401(a) (stating that "[n]o person is liable on an instrument unless his signature appears thereon"), 3404(a) (stating that "[a]ny unauthorized signature is wholly inoperative as that of the person whose name is signed unless he ratifies it or is precluded

from denying it"), 4401(a) (stating that only items which are "otherwise properly payable" may be charged by a bank against an account of a customer); *Hardex–Steubenville Corp. v. Western Pennsylvania Nat'l Bank,* 446 Pa. 446, 285 A.2d 874, 876 (1971) (holding that a bank breaches its contract with a customer when it pays the holder of a forged check). In addition, the parties agree that under Pennsylvania law a bank must ordinarily bear the loss occasioned by forgery of an endorsement. *Philadelphia Title Ins. Co. v. Fidelity–Philadelphia Trust Co.,* 419 Pa. 78, 212 A.2d 222, 224 (1965).

The dispute between plaintiff and Merrill Lynch centers on three exceptions to these general rules; these exceptions shift liability for forged checks away from the drawee bank. The first exception is applicable to all of the checks at issue here; this exception arises when any person, including a customer, has through her or his negligence allowed the forgery to occur and the bank has paid the forged check in good faith and in accordance with reasonable commercial standards. *See* 13 Pa.Cons.Stat.Ann. § 3406 (Pennsylvania codification of U.C.C. § 3–406). The second exception only applies to the checks with forged maker signatures; it arises when a customer is negligent in examining her or his statement and/or cancelled checks such that a repeat forger is able to continue forging checks over a period of time, and it only applies if the bank has exercised ordinary care in paying the forged checks. *See* 13 Pa.Cons.Stat.Ann. § 4406 (Pennsylvania codification of U.C.C. 4–406). The third exception only applies to the checks with forged endorsements; it arises if the person who illegally took the proceeds of the check at issue was involved in preparing the check for the customer but never intended that the designated payee have an interest in that check. *See* 13 Pa.Cons.Stat.Ann. § 3405 (Pennsylvania codification of U.C.C. § 3–405). Each of these exceptions will be discussed below.

As all of the events in this case occurred before the 1992 amendments to the Pennsylvania codification of the U.C.C., the statutory sections which are applicable to this case and which are cited in this opinion are the sections that were in effect prior to those amendments. *See Universal Premium Acceptance Corp. v. York Bank & Trust Co.,* 69 F.3d 695, at n. 1 (3d Cir.1995).

### A. *Negligence Before Forgery*

■ The first exception, which applies to all of the checks at issue here, is provided by 13 Pa.Cons.Stat.Ann. § 3406:

Any person who by his negligence substantially contributes to a material alteration of the instrument or to the making of an unauthorized signature is precluded from asserting the alteration or lack of authority against a holder in due course or against a drawee or other payor who pays the instrument in good faith and in accordance with the reasonable commercial standards of the business of the drawee or payor.

In order to take advantage of this exception, the burden is on defendant Merrill Lynch to prove that (1) ALA was negligent; (2) its negligence substantially contributed to the making of the unauthorized signature; and (3) Merrill Lynch acted in good faith and in accordance with reasonable commercial standards. *Menichini v. Grant,* 995 F.2d 1224, 1234 (3d Cir.1993) (citing *Jacoby Transp. Sys. v. Continental Bank,* 277 Pa.Super. 440, 419 A.2d 1227, 1231 (1980)).

With regard to the third element, it is uncontradicted that during the relevant time period, "it was not a prescribed Bank One procedure to compare signatures on the WCMA checks presented to Bank One for payment with WCMA customer signature cards, a process known as 'sight-paying.'" Ryan Cert. ¶ 3. Bank One processed and paid WCMA checks on behalf of Merrill Lynch during the relevant time period. *Id.* at ¶ 2. Merrill Lynch argues that not sight-paying any of the WCMA checks was in line with reasonable commercial standards because it was consistent with general banking usage. In support of this argument, Merrill Lynch points to a statement by Mr. Ryan, a Bank One employee, that "general banking usage [did not include] the sight-paying of *all* checks presented for payment." Ryan Cert. ¶ 4 (emphasis added). Unfortunately for Merrill Lynch, this statement is only evi-

dence in support of the proposition that it was general banking usage to not sight-pay all checks; this statement does not support the proposition that it was general banking usage to not sight-pay any checks. Merrill Lynch has therefore failed to present any evidence that its failure to compare any WCMA checks with customer signature cards conformed with reasonable commercial standards.

In addition, courts outside of Pennsylvania have uniformly held that a bank fails to meet reasonable commercial standards when it fails to check the signatures on any checks. *See, e.g., Perley v. Glastonbury Bank & Trust Co.*, 170 Conn. 691, 368 A.2d 149, 155 (1976) (involving forged endorsements); *McDowell v. Dallas Teachers Credit Union*, 772 S.W.2d 183, 189 (Tex.Ct.App.1989) (reversing judgment in favor of bank even though bank had established that its procedures conformed to general bank usage); *see also Hanover Ins. Cos. v. Brotherhood State Bank*, 482 F.Supp. 501 (D.Kan.1979) (holding that bank has a duty to examine checks as to the named payee). In addition, cases applying the requirement that banks exercise "ordinary care" in handling checks are also instructive as courts have generally held that "ordinary care" under U.C.C. § 4-406 is the same as "reasonable commercial standards" under U.C.C. § 3-406. *See Rhode Island Hosp. Trust Nat'l Bank*, 848 F.2d 291, 293 (1st Cir.1988) (listing cases); *McDowell*, 772 S.W.2d at 192. Those cases have held that a failure by a bank to check the signatures on any checks fails to meet the duty of the bank to exercise ordinary care. *See, e.g., Putnam Rolling Ladder Co. v. Manufacturers Hanover Trust Co.*, 74 N.Y.2d 340, 547 N.Y.S.2d 611, 546 N.E.2d 904 (1989) (entering judgment for customer); *Medford Irrigation Dist. v. Western Bank*, 66 Or.App. 589, 676 P.2d 329 (1984) (affirming summary judgment for customer when bank failed to check signatures on all checks under $5,000); *McDowell*, 772 S.W.2d at 191 (reversing judgment in favor of bank). While courts in other states have held that a bank need not "sight-pay" all checks, they have also held that some type of spot checking system is required in order to meet reasonable commercial standards and fulfill the duty of a bank to exercise ordinary care. *See, e.g., Rhode Island Hosp. Trust Nat'l Bank v. Zapata Corp.*, 848 F.2d 291, 294-96 (1st Cir. 1988) (holding that system of spot checking met duty of ordinary care under U.C.C. § 4-406); *McDowell*, 772 S.W.2d at 189-90.

■ Merrill Lynch acknowledges the holdings of these courts, but it argues that Pennsylvania courts have adopted a different standard. As the Supreme Court of Pennsylvania has not ruled on this issue, this Court must predict how that court would rule. *Commissioner v. Estate of Bosch*, 387 U.S. 456, 465, 87 S.Ct. 1776, 1782-83, 18 L.Ed.2d 886 (1967). In making that prediction, this Court may consider a range of information, including "relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand." *McKenna v. Ortho Pharmaceutical Corp.*, 622 F.2d 657, 663 (3d Cir.), *cert. denied*, 449 U.S. 976, 101 S.Ct. 387, 66 L.Ed.2d 237 (1980). Decisions of intermediate state courts, while but one datum to consider, are "'indicia of how the state's highest court might decide' the issue." *McGowan v. University of Scranton*, 759 F.2d 287, 291 (3d Cir.1985) (quoting *Pennsylvania Glass Sand Corp. v. Caterpillar Tractor Co.*, 652 F.2d 1165, 1167 (3d Cir.1981)). Such decisions should only be disregarded if this Court is "convinced by other persuasive data that the highest court of the state would decide otherwise." *West v. A.T. & T. Co.*, 311 U.S. 223, 237, 61 S.Ct. 179, 183, 85 L.Ed. 139 (1940).

■ Merrill Lynch argues that the Superior Court case of *Jacoby Trans. Sys.* establishes that under Pennsylvania law not comparing the signatures on any checks to customer signature cards can meet reasonable commercial standards. *Jacoby Trans. Sys.*, 419 A.2d at 1231. This argument by Merrill Lynch fails, however, because *Jacoby Trans. Sys.* is distinguishable from the instant case for several reasons. First, the checks involved in that case lacked signature lines and instead had the name of the corporate customer printed in the place where signature lines would normally be found. *Id.* at 1228.

Second, the bank in that case presented evidence that its practice of not checking any signatures was both in conformance with general bank usage and was supported by substantial economic and practical reasons. *Id.* at 1233. And finally, the court in *Jacoby Trans. Sys.* appears to have relied on the egregiousness of the negligence of the customer in that case, which included giving unsigned checks to a third-party and not attempting to stop those checks from being cashed even after becoming aware that some of those checks had been cashed. *Id.* at 1232–33. Under Pennsylvania law, the degree of negligence of a customer should not even be considered if the bank has failed to follow reasonable commercial standards. *Menichini,* 995 F.2d at 1236 ("[i]f Mellon Bank fails to establish that it acted in good faith and in accordance with commercially reasonable standards, the estoppel bar of [13 Pa.Cons.Stat.Ann. 3406] will prove unavailing and the loss must be allocated to Mellon Bank"); *see also Perley,* 368 A.2d at 153 (holding that once a bank has failed to act in accordance with reasonable commercial standards the negligence of a customer has no effect under U.C.C. § 3–406); *Putnam Rolling Ladder Co.,* 547 N.Y.S.2d at 615, 546 N.E.2d at 908 (rejecting the use of comparative negligence under U.C.C. § 4–406). While there is some evidence that ALA may have been negligent in the instant case, its negligence does not rise to the level involved in *Jacoby Trans. Sys.,* even viewing the evidence in the light most favorable to Merrill Lynch. *Compare* Moss Dep. at 9–14, 20, 24–28 (describing disorganization of ALA office and broad, largely unchecked responsibilities of Stedman) *with id.* at 18–19, 29, 35 (describing various controls and limits then ALA Executive Director Moss placed on Stedman). Therefore, this Court concludes that *Jacoby Trans. Sys.* is distinguishable from the instant cause.

■ Even if the *Jacoby Trans. Sys.* case was applicable to the instant case in the way that defendant Merrill Lynch asserts, there are substantial grounds for believing that the Supreme Court of Pennsylvania would not adopt its holding. The Supreme Court of Pennsylvania gives a significant amount of deference to decisions of other states when deciding questions under uniform laws. 1 Pa.Cons.Stat.Ann. § 1927 ("[s]tatutes uniform with those of other states shall be interpreted and construed to effect their general purpose to make uniform the laws of those states which enact them"); *Commonwealth v. National Bank & Trust Co.,* 469 Pa. 188, 364 A.2d 1331, 1335 (1976). As has already been discussed, other jurisdictions have uniformly held that to not check the signatures on any checks, as was the case here, does not meet reasonable commercial standards, although conducting only spot checks may be acceptable. *See* discussion *supra* p. 208. In light of the consistent holdings of courts in other jurisdictions, this Court predicts that the Supreme Court of Pennsylvania would conclude that the failure of Merrill Lynch to conduct at least spot checks of signatures on WCMA checks demonstrates a failure to meet reasonable commercial standards. Therefore, this Court concludes that Merrill Lynch is barred by its failure to follow reasonable commercial standards from availing itself of this first exception, embodied in 13 Pa.Cons.Stat.Ann. § 3406, to the general rule that a drawee bank is liable to a drawer customer for paying on a check containing a forged maker signature.

## B. *Negligence After Forgery*

■ The second exception to the general rule that a drawee bank is liable to a drawer customer for paying on a check containing a forged maker signature is provided by 13 Pa.Cons.Stat.Ann. § 4406:

(a) **General rule.**—When a bank sends its customer a statement of account accompanied by items paid in good faith in support of the debit entries or holds the statement and items pursuant to a request or instructions of its customer or otherwise in a reasonable manner makes the statement and items available to the customer, the customer must exercise reasonable care and promptness to examine the statement and items to discover his unauthorized signature or any alteration on an item and must notify the bank promptly after discovery thereof.

**(b) Effect of failure to report unauthorized signature or alteration.**—If the bank establishes that the customer failed with respect to an item to comply with the duties imposed on the customer by subsection (a) the customer is precluded from asserting against the bank:

(1) his unauthorized signature or any alteration on the item if the bank also establishes that it suffered a loss by reason of such failure; and

(2) an unauthorized signature or alteration by the same wrongdoer on any other item paid in good faith by the bank after the first item and statement was available to the customer for a reasonable period not exceeding 14 calendar days and before the bank receives notification from the customer of any such unauthorized signature or alteration.

**(c) Nonliability of bank affected by lack of ordinary care.**—The preclusion under subsection (b) does not apply if the customer establishes lack of ordinary care on the part of the bank in paying the item.

In other words, if a customer could have stopped a repeat forger by examining a bank statement or a cancelled check with reasonable care but failed to do so, the bank will not be liable for those losses associated with the forged instruments that could have been prevented but such an examination. The parties agree that this exception only applies to the twelve checks with forged maker signatures.

With regard to subsection (c), the burden is on plaintiff, as subrogee for ALA, to establish that Merrill Lynch failed to exercise ordinary care in paying the checks at issue here. 13 Pa.Cons.Stat.Ann. § 4406(c). Plaintiff has met its burden by pointing to the certification of Mr. Ryan which states that it was the procedure of Bank One during the relevant time period not to compare WCMA checks with customer signature cards. *See* Ryan Cert. at ¶ 3. As has already been discussed, courts in other jurisdictions have found the "ordinary care" requirement imposed by U.C.C. § 4–406 to be the same as the "reasonable commercial standards" requirement imposed by U.C.C. § 3–406 and that a failure to check the signa-

tures on at least some checks violates both of these requirements. This Court predicts therefore, for the reasons already discussed, that the Supreme Court of Pennsylvania would conclude that the failure of Merrill Lynch to compare the signatures on at least some of the WCMA checks against customer signature cards demonstrates as a matter of law a lack of ordinary care by Merrill Lynch under 13 Pa.Cons.Stat.Ann. § 4406(c). As a result, this Court concludes that Merrill Lynch cannot avail itself of the exception provided by 13 Pa.Cons.Stat.Ann. § 4406 to the general rule that a bank is liable for paying on a check with a forged maker signature.

Since both exceptions that apply to the checks with forged maker signatures are unavailable to Merrill Lynch, the cross-motion by plaintiff for summary judgment will be granted and judgment will be entered in favor of plaintiff in the amount of those checks. While plaintiff in its amended complaint asked for prejudgment interest, attorneys' fees and costs, and whatever other appropriate relief the Court deemed just and equitable, in the form of order accompanying the instant motion by plaintiff, plaintiff asked only for judgment in the actual amount of the checks at issue. The Court will therefore limit judgment to the actual amount of the checks with forged maker signatures, minus a pro-rated share of the $5,059.00 repaid by Stedman to ALA. In other words, since the total amount of all the checks involved in this case is $129,627.23, and the since the amount of the checks with forged maker signatures is $100,215.31, or 77.31% of the total amount, judgment will be entered for plaintiff in the amount of $96,304.20, which is $100,215.31 minus 77.31% of 5,059.00.

### C. *Lack of Intended Interest for Payee*

The third exception, which only applies to the checks with forged endorsements, is provided by 13 Pa.Cons.Stat.Ann. § 3405:

An indorsement by any person in the name of a named payee is effective if:

(2) a person signing as or on behalf of a maker or drawer intends the payee to have no interest in the instrument; or

(3) an agent or employee of the maker or drawer has supplied him with the name of the payee intending the latter to have no such interest.

Merrill Lynch argues that the uncontradicted evidence shows that Stedman never intended, at least with regard to the checks containing only forged endorsements, that the designated payee, the regional American Lung Association office, have any interest in those checks. Plaintiff counters that it is possible that when Stedman had the checks prepared she intended to send them on to the regional ALA office but then decided, after the checks were signed, to endorse them over to herself.

 There is no direct evidence regarding the intent of Stedman and neither Merrill Lynch nor plaintiff has put on the record any sworn statements from plaintiff or any documents or deposition testimony that indicate how exactly Stedman managed to get legitimate signatures on each of the checks with only forged endorsements. Indeed the only evidence pointed to by either party which is relevant to the instant issue is the fact that Stedman eventually did endorse these checks over to herself. Lacking any additional evidence, this Court concludes that the inferences argued by Merrill Lynch and the inferences argued by plaintiff are both reasonable. On one hand, from the instant that she prepared a probably fake invoice for payment, Stedman could have intended to have a check drawn and signed but never sent to the ALA regional office. On the other hand, she may have originally prepared the check as part of her normal duties, which often included preparing legitimate checks to be sent to the ALA regional office, and then, after the check was signed, decided to convert the check to her personal use by forging the endorsement. *See* Moss Dep. at 25–26 (describing how Stedman handled payments to the ALA regional office); Cline Aff., Exhibit 1 (describing methods used by Stedman to misappropriate ALA funds, and noting that additional methods may have existed). This Court concludes, therefore, that there remains a genuine issue of material fact with regard to these checks and so will deny both motions for summary judgment with regard to these checks.

## III. CONCLUSION

For the foregoing reasons, the motion by plaintiff for summary judgment will be granted with regard to the checks containing forged maker signatures but will be denied with regard to the checks containing only forged endorsements, and the cross-motion by defendant Merrill Lynch will be granted with regard to the single check to which plaintiff has conceded judgment should be entered for Merrill Lynch but will be denied in all other respects.

An appropriate Order follows.

### *ORDER*

**AND NOW**, this 13th day of November 1995, upon consideration of the motion by plaintiff the Travelers Indemnity Company for summary judgment (Document No. 23), the response and cross-motion for summary judgment by defendant Merrill Lynch, Pierce, Fenner & Smith ("Merrill Lynch") thereto (Document No. 25), the reply of plaintiff thereto, and the reply of defendant Merrill Lynch thereto, and the pleadings, depositions, answers to interrogatories, admissions on file, affidavits, and other discovery of record, it is hereby **ORDERED** for the reasons set forth in the foregoing memorandum that the motion by plaintiff for summary judgment is **GRANTED IN PART** and **DENIED IN PART** and that the cross-motion by defendant Merrill Lynch is **GRANTED IN PART** and **DENIED IN PART. IT IS FURTHER ORDERED** that:

1. The motion by plaintiff for summary judgment is **GRANTED** with respect to the claims of plaintiff relating to check numbers 1980, 1982, 2390, 2475, 2609, 2675, 2783, 2918, 3061, 3128, 3131 and 3180 drawn on the Working Capital Management Account maintained by the American Lung Association of Philadelphia and Montgomery Counties with Merrill Lynch, Pierce, Fenner & Smith;

2. The motion by plaintiff for summary judgment is **DENIED** in all other respects;

3. The cross-motion by defendant Merrill Lynch for summary judgment is **GRANTED** with respect to the claims of plaintiff relating to check number 1586 drawn on the Working Capital Management Account maintained by the American Lung Association of Philadelphia and Montgomery Counties with Merrill Lynch, Pierce, Fenner & Smith; and

4. The cross-motion by defendant Merrill Lynch for summary judgment is **DENIED** in all other respects.

**JUDGMENT IS HEREBY ENTERED** in favor of plaintiff the Travelers Indemnity Company and against defendant Merrill Lynch, Pierce, Fenner & Smith in the amount of $96,304.20.

**JUDGMENT IS HEREBY ENTERED** in favor of defendant Merrill Lynch, Pierce, Fenner & Smith and against plaintiff the Travelers Indemnity Company with regard to the claims of plaintiff relating to check number 1586 drawn on the Working Capital Management Account maintained by the American Lung Association of Philadelphia and Montgomery Counties with Merrill Lynch, Pierce, Fenner & Smith.

### ORDER

**AND NOW,** this 28th day of December, 1995, upon consideration of the motion by defendant Merrill Lynch, Pierce, Fenner & Smith ("Merrill Lynch") (Document No. 33) for reconsideration of the Order of this Court dated November 13, 1995 to the extent that this Order granted in part the cross-motion by plaintiff for summary judgment, and the response of plaintiff thereto, having found that in its motion for reconsideration defendant Merrill Lynch does not present any new evidence or new legal precedents but instead merely restates the arguments it made in its original memoranda filed in connection with the cross-motions for summary judgment, and having concluded that this Court, after careful consideration of those arguments, did not err in granting partial summary judg-

ment for plaintiff, it is hereby **ORDERED** that the motion for reconsideration is **DENIED.**

**IT IS FURTHER ORDERED** that, having found that certifying for immediate appeal the issue raised in the motion for reconsideration and decided in the November 13, 1995 Order would not markedly aid the efficient disposition of this litigation, it is hereby **ORDERED** that the request by defendant Merrill Lynch for certification for immediate appeal of that Order is **DENIED.**